955 So.2d 517 (2007)
Alexander GALINDEZ, Petitioner,
v.
STATE of Florida, Respondent.
No. SC05-1341.
Supreme Court of Florida.
February 15, 2007.
Rehearing Denied April 17, 2007.
*518 Bennett H. Brummer, Public Defender and Shannon Patricia McKenna, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, Richard L. Polin, Bureau Chief Criminal Appeals, Michael E. Hantman and Paulette R. Taylor, Assistant Attorney Generals, Miami, FL, for Respondent.
PER CURIAM.
In Galindez v. State, 910 So.2d 284, 285 (Fla. 3d DCA 2005), the Third District Court of Appeal certified conflict with the First District Court of Appeal's decision in Isaac v. State, 911 So.2d 813 (Fla. 1st DCA 2005), which held that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), decided after the defendant's conviction was final, apply to a subsequent resentencing. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.; Galindez v. State, 925 So.2d 1030 (Fla. 2006) (granting review). As we explain below, we find that any failure to apply Apprendi and Blakely in this case constitutes harmless error. Accordingly, we need not determine whether these Supreme Court cases apply in such resentencings and we decline to resolve the conflict at this time.

I. APPRENDI AND BLAKELY AND THE CONFLICT IN THE DISTRICT COURTS
Below we first explain the holdings in Apprendi and Blakely and the pertinent *519 facts of Galindez and briefly describe the conflict between the district courts. We then apply the Supreme Court's recent decision in Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), to the facts of this case and conclude that any error in applying Apprendi and Blakely is harmless.

A. Apprendi and Blakely and Sentencing
The Supreme Court's decisions in Apprendi and Blakely have significantly affected criminal sentencing procedure at both the state and federal levels. In 2000, the Court held in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Four years later, the Court applied Apprendi in examining a sentence imposed upon the defendant's guilty plea. Blakely, 542 U.S. at 301, 124 S.Ct. 2531. Addressing the State's claim that the sentence fell within the statutory maximum, the Court stated the following:
Our precedents make clear, however, that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.
Id. at 303-04, 124 S.Ct. 2531 (citations omitted).
The Supreme Court recently applied the principles of Apprendi and Blakely to a determinate sentencing statute. Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). California's sentencing scheme granted trial courts discretion to sentence defendants to one of three terms of years. The middle term was the designated default, but the trial court could impose the upper term upon its own finding of aggravating factors that the Supreme Court concluded were "neither inherent in the jury's verdict nor embraced by the defendant's plea." Id. at 860. Concluding that the middle term constituted the statutory maximum, the Court held that "[b]ecause the [statute] allocates to judges the sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." Id. at 859.
With these three decisions, the Court effectively eliminated most judicial factfinding that would increase a sentence. Except for the fact of a prior conviction, a judge may not find any fact that exposes a defendant to a sentence exceeding the relevant statutory maximum, unless that fact inheres in the verdict, the defendant waives the right to a jury finding, or the defendant admits the fact. Under Apprendi, Blakely, and Cunningham, such sentence-elevating facts must be found by a jury, not a judge, and established beyond a reasonable doubt.

B. The Facts of the Case
Based on the evidence, including the twenty-four-year-old Galindez's admissions that he repeatedly had sexual relations with a twelve-year-old girl over a period of several months and impregnated her and the pregnant victim's testimony confirming those facts, a jury found Galindez guilty of two counts of lewd and lascivious assault on a minor and one count of child abuse by *520 impregnating the victim. See §§ 800.04, 827.04(3), Fla. Stat. (1997). Galindez's sentencing scoresheet assessed 240 victim injury points (3 × 80) for sexual penetration, and the trial court sentenced Galindez to a guidelines sentence of thirty years in prison. The Third District affirmed. Galindez v. State, 728 So.2d 333 (Fla. 3d DCA 1999).
Galindez then filed a motion under Florida Rule of Criminal Procedure 3.800(a), alleging scoresheet error. See Galindez v. State, 831 So.2d 780, 780 (Fla. 3d DCA 2002). On rehearing, the district court held that Galindez's scoresheet "erroneously reflect[ed] an assessment of 80 victim injury points" for his conviction on one of the lewd and lascivious assault counts. Id. Because "the conviction was for sexual union without penetration" and sexual penetration was not charged, the court held he should have been assessed only 40 points. Id. The Third District reversed and remanded for resentencing.
On October 30, 2003, the circuit court used a revised guidelines scoresheet assessing 200 victim injury points to sentence Galindez to 24 years in prison: 18 years on Count I (lewd assault on a minor); a consecutive sentence of six years on Count IV (lewd assault on a minor); and, concurrent with Count IV, a five-year sentence on Count V (child abuse by impregnation).
Almost immediately, Galindez filed a motion for resentencing, which the circuit court denied on November 21, 2003. Galindez appealed to the Third District. During the pendency of that appeal, he filed a motion in the circuit court under Florida Rule of Criminal Procedure 3.800(b), arguing for the first time that the assessment of victim injury points violated Apprendi because the jury did not make the victim injury findings. The circuit court denied the motion.
The following month, the United States Supreme Court decided Blakely. In considering Galindez's appeal, the Third District stated that the "primary issue" was whether Apprendi and Blakely "require the invalidation of any points for penetration because they were assessed by the court, rather than by the jury." Galindez, 910 So.2d at 284-85. The court held that to apply Apprendi and Blakely to the resentencing in this case would constitute their retroactive application and thus "alter the effect of a jury verdict and conviction." Id. at 285. The court certified conflict with the First District's contrary decision in Isaac.

C. The Conflict with Isaac

In light of our decision in Hughes v. State, 901 So.2d 837, 838 (Fla.2005), that Apprendi does not apply retroactively to cases that were final when it was decided, the Third District in Galindez held that to apply Apprendi and Blakely in a resentencing held after those opinions issued, when the conviction and original sentence were final before they issued, would constitute retroactive application. Galindez, 910 So.2d at 285. In the conflict case, however, the First District held the opposite. See Isaac, 911 So.2d at 814.
Isaac's conviction was final in 1998, and his sentence was final the next year. See id. Subsequently, pursuant to a rule 3.800(a) motion, Isaac's sentence was vacated, and he was resentenced. During the pendency of his appeal from resentencing, he filed motions under Florida Rules of Criminal Procedure 3.850 and 3.800(b) raising claims of Apprendi error. See Isaac, 911 So.2d at 814; Isaac v. State, 826 So.2d 396, 396 (Fla. 1st DCA 2002). In considering the circuit court's denial of Isaac's 3.850 motion, the First District stated that the "heart" of Isaac's claim was that, by making the factual determination of an escalating pattern of criminal activity *521 in imposing a departure sentence at resentencing, the trial court violated Apprendi, as clarified by Blakely. 911 So.2d at 814. The First District concluded that
as Apprendi was decided prior to the appellant's resentencing, the trial court was bound by its holding. Although this Court previously affirmed the appellant's departure sentence on the basis that Apprendi does not apply so long as a sentence does not exceed the statutory maximum set forth in section 775.082, Isaac, 826 So.2d at 396, the statutory maximum has since been revealed to mean "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537. Therefore, a departure sentence imposed pursuant to the trial court determining a fact by merely a preponderance of the evidence violates the holding of Apprendi as explained by Blakely.

Id. at 814-15; accord Moline v. State, 31 Fla. L. Weekly D701, ___ So.2d ___, 2006 WL 504028 (Fla. 1st DCA Mar.3, 2006), notice invoking discretionary review filed, No. SC06-482 (Fla. Mar. 13, 2006).
Although these two district court decisions clearly conflict regarding the application of Apprendi and Blakely in resentencings held after a conviction is final, we express no opinion on this issue. As we explain below, if it was error not to apply these cases at the resentencing hearing, the error is harmless.

II. APPRENDI AND HARMLESS ERROR
We agree with the State that even if Apprendi and Blakely apply to Galindez's resentencing, any error is harmless beyond a reasonable doubt in this case. Although we have not previously addressed whether Apprendi error may be harmless, we have previously held that it is not fundamental error, and that the error must be preserved for appellate review in order to obtain relief. Hughes, 901 So.2d at 844 ("Finally, concerning Apprendi, we [have] held . . . that a claim of Apprendi error must be preserved for review and we expressly rejected the assertion that such error is fundamental."). Recently, however, the United States Supreme Court addressed the harmless error issue directly. Below, we address (A) the applicable harmless error test, and (B) our conclusion that any error is harmless in Galindez's case.

A. The Applicable Harmless Error Test
The United States Supreme Court has recently addressed whether an Apprendi error can be harmless. In Washington v. Recuenco, ___ U.S. ___, ___, 126 S.Ct. 2546, 2549, 165 L.Ed.2d 466 (2006), the jury found the defendant guilty of assaulting his wife with a deadly weapon, which the information charged was "a handgun." At sentencing, the judge found that the defendant was armed with a "firearm" and imposed the three-year mandatory sentence enhancement attendant to that finding, rather than the one-year enhancement attendant to the jury's "deadly weapon" finding. On appeal, the State conceded that this violated Blakely and Apprendi, but argued the error was harmless. Id. at 2549-50. The Washington Supreme Court, however, had previously concluded that Apprendi/Blakely error could never be harmless. Id. at 2550 (quoting State v. Hughes, 154 Wash.2d 118, 110 P.3d 192, 205 (2005), which held that Blakely error was structural error requiring reversal). The Supreme Court granted review solely to determine whether harmless error analysis applies to such error.
*522 The Court acknowledged that under Apprendi it "ha[d] treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt." 126 S.Ct. at 2552. Accordingly, the Court found the case before it in Recuenco "indistinguishable from" Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), explaining:
The only difference between this case and Neder is that in Neder, the prosecution failed to prove the element of materiality to the jury beyond a reasonable doubt, while here the prosecution failed to prove the sentencing factor of "armed with a firearm" to the jury beyond a reasonable doubt. Assigning this distinction constitutional significance cannot be reconciled with our recognition in Apprendi that elements and sentencing factors must be treated the same for Sixth Amendment purposes.
Recuenco, 126 S.Ct. at 2552.
Because the question of Apprendi/Blakely error also involved judicial factfinding versus jury factfinding, the Court concluded that the harmless error analysis applied in Neder also applied to the error in Recuenco. Id. In Neder, the Court framed the test as follows: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Neder, 527 U.S. at 18, 119 S.Ct. 1827. The Court concluded that the same harmless error analysis developed in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and applied in cases concerning the erroneous admission of evidence under the Fifth and Sixth Amendments, also applied to infringement of the jury's factfinding role under the Sixth Amendment. Neder, 527 U.S. at 18, 119 S.Ct. 1827. The Court explained that
a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is "no," holding the error harmless does not "reflec[t] a denigration of the constitutional rights involved." Rose [v. Clark], 478 U.S. [570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)].
527 U.S. at 19, 119 S.Ct. 1827. For example, in Neder, the jury instructions omitted the element of materiality, a fact which was improperly found by the judge in violation of the right to jury trial. Id. at 18, 119 S.Ct. 1827. The Court found that strong evidence supported the judicial finding and explained that "[i]n a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee." Id. at 19, 119 S.Ct. 1827.
This Court has long applied Chapman's harmless error analysis, which we outlined in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), to claims of failure to instruct on an undisputed element. See Glover v. State, 863 So.2d 236, 237-38 (Fla.2003) (approving the district court's holding that the age of the defendant is an element of capital sexual battery but that any error in failing to instruct on this undisputed element was harmless); see also State v. Delva, 575 So.2d 643, 645 (Fla.1991) (stating that the failure "to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error" and is subject to the contemporaneous objection rule).
Finally, in Recuenco, the Supreme Court reversed the Washington Supreme Court's holding that harmless error analysis does not apply to Apprendi error. Accordingly, to the extent some of our pre-Apprendi *523 decisions may suggest that the failure to submit factual issues to the jury is not subject to harmless error analysis, Recuenco has superseded them. See, e.g., State v. Estevez, 753 So.2d 1, 7 (Fla.1999) (holding that even where the evidence is uncontroverted, to sentence a defendant to a minimum mandatory sentence for trafficking, the jury must make express findings of the amount of cocaine involved); State v. Hargrove, 694 So.2d 729, 730 (Fla. 1997) (holding that even where evidence regarding the use of a firearm is unrebutted, to impose mandatory minimum sentence, a jury must make that finding); State v. Overfelt, 457 So.2d 1385, 1387 (Fla. 1984) (holding that to enhance a sentence because of the defendant's use of a firearm, the jury must find the defendant guilty of a crime involving a firearm or otherwise specifically find that a firearm was used).
We now turn to the question of harmless error in this case.

B. Apprendi Error Is Harmless in this Case
At resentencing, the trial court assessed 200 points for victim injury with regard to Counts I and IV (lewd and lascivious assault) and Count V. Galindez contends that the trial court erred in assessing 80 points as to Count I. Count I charged that "on various occasions" in a four-month period, Galindez "committed an act defined as sexual battery" on a child "by placing his penis in union with . . . and/or penetrating the vagina of A.M. (a minor) with his penis." Galindez claims that because the charge was made in the alternative (and therefore the jury did not specifically find that penetration was involved), the trial court could assess only 40 points for victim injury.[1] The exception in Blakely does not apply because Galindez did not waive the right to factfinding by a jury and did not admit the facts. Blakely, 542 U.S. at 303-304, 124 S.Ct. 2531.[2] Therefore, assuming Apprendi applies to Galindez's resentencing, for purposes of our harmless error analysis the issue is whether the failure to have the jury make the victim injury finding as to Count I contributed to the conviction or sentence in other words, whether the record demonstrates beyond a reasonable doubt that a rational jury would have found penetration. Cf. Delvalle v. State, 653 So.2d 1078, 1079 (Fla. 5th DCA 1995) (citing DiGuilio and holding that where the defendant alleged that error regarding a *524 lesser included offense deprived him of a jury pardon, "[g]iven the evidence adduced at trial, the error also was harmless, since it is inconceivable that any rational jury could have returned a verdict finding that there was no firearm involved in the commission of the charged offenses").
At trial the young victim, then pregnant by Galindez, testified that she and Galindez engaged in sexual intercourse on multiple occasions over a period of several months. Galindez's confession confirming these facts, including his admission that they repeatedly had sexual intercourse, was admitted at trial. Finally, Galindez's defense at trial was that the twelve-year-old victim consented. Thus, Galindez did not dispute the facts of the sexual relationship at trial, and he did not contest them at resentencing, either.
In light of the clear and uncontested record evidence of penetration regarding Count I, we hold that no reasonable jury would have returned a verdict finding there was no penetration. See Neder, 527 U.S. at 19, 119 S.Ct. 1827 ("[W]here a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee."). Accordingly, we find the error in this case harmless beyond a reasonable doubt.

III. CONCLUSION
For the foregoing reasons, we hold that harmless error analysis applies to Apprendi and Blakely error. Accordingly, we approve the result but not the reasoning of the decision below.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
CANTERO, J., specially concurs with an opinion, in which WELLS and BELL, JJ., concur.
WELLS and BELL, JJ., concur in result only.
CANTERO, J., specially concurring.
I agree with the majority that any violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), or Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), would be harmless error in this case. I write to express my belief that whether Apprendi and Blakely can even be applied at the resentencing of a defendant whose conviction and original sentence became final before those cases were decided depends on whether a new jury can be empaneled to decide facts relevant to sentencing.
We already have held that Apprendi does not apply retroactively. See Hughes v. State, 901 So.2d 837 (Fla.2005). Presumably, neither does its offspring, Blakely. See, e.g., Hicks v. State, 905 So.2d 990, 991 (Fla. 3d DCA) (holding that because Apprendi does not apply retroactively, neither does Blakely), review denied, 917 So.2d 193 (Fla.2005); Burrows v. State, 890 So.2d 286 (Fla. 2d DCA 2004) (same), review denied, 914 So.2d 952 (Fla.2005); McBride v. State, 884 So.2d 476 (Fla. 4th DCA 2004) (same). Nevertheless, we have traditionally held that "resentencing should proceed de novo on all issues bearing on the proper sentence." Morton v. State, 789 So.2d 324, 334 (Fla.2001) (quoting Teffeteller v. State, 495 So.2d 744, 745 (Fla.1986)). Therefore, if new juries may be empanelled so that Apprendi and Blakely errors could be remedied entirely within the sentencing framework, then I *525 would agree that applying those cases does not constitute a retroactive application. If, on the other hand, the resentencing court is restricted to the findings of the original jury at the time of the defendant's (now final) conviction, then the "facts" that the sentencing judge may consider are frozen at the time of conviction  if the jury did not find it, the judge may not consider it. Under such an interpretation, Apprendi and Blakely no longer affect only the sentencing; they affect the conviction as well because the facts found at that time dictate the sentence. If that is the case, then applying Apprendi and Blakely to a resentencing would "alter the effect of a jury verdict and conviction." Galindez v. State, 910 So.2d 284, 285 (Fla. 3d DCA 2005). Stated another way, if Apprendi and Blakely reverberate backward to the defendant's conviction, applying those cases to defendants whose convictions already were final constitutes a retroactive application, contrary to our decision in Hughes. Such an approach also would be misguided as a matter of policy (retroactivity, after all, is more a policy question than anything else) because it penalizes the State for pursuing the conviction in accordance with then prevailing law without allowing it a remedy, and because it allows the defendant to benefit from a conviction he has shown no right to reopen.
Below I conclude that (I) if a new jury may be empanelled, the principle of de novo resentencing supports application of Apprendi and Blakely on resentencing; and that (II) if a new jury may not be empanelled, the principle of finality prohibits the application of Apprendi and Blakely on resentencing.

I. The Principle of De Novo Resentencing
We have consistently held that resentencing proceedings must be a "clean slate," Preston v. State, 607 So.2d 404, 408 (Fla.1992), meaning that the defendant's vacated sentence becomes a "nullity" and his "resentencing should proceed de novo on all issues bearing on the proper sentence." Morton, 789 So.2d at 334 (quoting Teffeteller, 495 So.2d at 745). This means that the trial court must extend to the defendant the "full panoply" of existing procedural protections, State v. Scott, 439 So.2d 219, 220 (Fla.1983), including any new constitutional protections that have been recognized since the defendant's original sentencing. Before Apprendi and Blakely, the law in this state, as we stated it in Lucas v. State, 841 So.2d 380 (Fla. 2003), was that "a resentencing is a completely new proceeding. It therefore necessarily follows that a resentencing court is not limited by evidence presented (or not presented) in . . . the original . . . sentencing phase." Id. at 387 (emphasis added) (citations omitted). Rather, both sides are entitled to produce additional evidence. See Mann v. State, 453 So.2d 784, 786 (Fla.1984) (explaining that at a de novo resentencing "both sides may, if they choose, present additional evidence"). In fact, because resentencing is de novo, the State was required to produce evidence on sentencing issues even if the State established the fact at the original sentencing. This was required whether or not the defendant disputed the issues in the prior sentencing proceeding. See, e.g., Tubwell v. State, 922 So.2d 378, 379 (Fla. 1st DCA 2006) (stating that because resentencing is de novo, "the state was not relieved of its burden to prove the prior offenses"); Rich v. State, 814 So.2d 1207, 1208 (Fla. 4th DCA 2002) (holding that at a resentencing, the State must again prove the basis for an enhanced sentence even though such evidence was produced at the original sentencing); Baldwin v. State, 700 So.2d 95, 96 (Fla. 2d DCA 1997) (stating that at resentencing, the defendant can challenge the prior convictions included on his scoresheet, *526 even though he did not challenge them at the original sentencing).
In addition to the parties' rights to present additional evidence and the State's burden to produce evidence, we also have held that the trial court is not limited to its findings from the prior proceeding, but may make new findings and may even increase the sentence. See Morton, 789 So.2d at 334 (stating that a trial court has "no obligation to make the same findings as those made in a prior sentencing proceeding"); Roberts v. State, 644 So.2d 81 (Fla.1994) (permitting the resentencing court to include an additional prior conviction on the revised guidelines scoresheet).
The question here is whether Apprendi and Blakely, two recent cases establishing that sentence-enhancing facts must be found by a jury beyond a reasonable doubt, apply on resentencing even though they were issued after the defendant's conviction became final. The defendant argues that the principle of de novo resentencing requires application of those decisions because, as we recently explained, "Apprendi affects only the procedure for enhancing the sentence," Hughes, 901 So.2d at 843, and "does not affect the determination of guilt or innocence." Id. at 841. As the defendant notes, we have traditionally included within the scope of de novo resentencing "all issues bearing on the proper sentence." Morton, 789 So.2d at 334 (quoting Teffeteller, 495 So.2d at 745).
I agree with the defendant that, to the extent that Apprendi and Blakely affect only sentencing, under the principle of de novo resentencing those decisions apply to him. To ensure that result, however  that Apprendi and Blakely do affect only the sentencing  we must authorize the empanelling of new juries that could find any sentence-enhancing facts previously found by the judge. If such juries are not authorized, and the facts relevant to sentencing are frozen at the moment of conviction  that is, no further factfinding is permitted  then Apprendi and Blakely do in fact affect the conviction. Without a new jury, the resentencing court would be limited to those facts found by the original jury at the time of the conviction. The State, in turn, would be forever prejudiced by its reliance on the old rule  i.e., that sentence-enhancing facts could be found by the judge. When new facts cannot be found and when the parties cannot adapt to the new law, resentencing is not truly de novo. The principle that governs in such circumstances is not that of de novo resentencing, but rather that of finality, which (as I explain in Section II) generally prohibits a defendant from using new laws to obtain relief based on the process leading to a still final conviction.
I would gladly authorize the empanelling of new juries on resentencing so that defendants can receive the protection of Apprendi and Blakely without undermining the finality of their convictions. We already predicted in Hughes that new juries would be necessary to remedy Apprendi errors at resentencing, which was one of our reasons for barring retroactive application of that case. See 901 So.2d at 845 ("In every case Apprendi affects, a new jury would have to be empaneled to determine, at least, the issue causing the sentence enhancement."). It is true that our existing rules do not provide a mechanism for empanelling a jury at the sentencing in a noncapital case. But we do have such a mechanism in death-penalty cases, see § 921.141(1), Fla. Stat. (2005), so the concept is far from foreign. The lack of a corresponding procedure for noncapital cases should not prevent us from creating one, given that it represents the best remedy for the constitutional violation.
*527 When confronted with new constitutional problems to which the Legislature has not yet responded, we have the inherent authority to fashion remedies. See, e.g., In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130, 1133 (Fla.1990) (acknowledging "the inherent power of courts . . . to afford us the remedy necessary for the protection of rights of indigent defendants," but warning that courts may not "ignore the existing statutory mechanism"). To remedy violations of Apprendi and Blakely, we would be entirely justified in adopting a procedure for the empanelling of new juries on resentencing. Nor would we be the first court to do so. See Aragon v. Wilkinson, 209 Ariz. 61, 97 P.3d 886, 891 (Ct.App.2004) (stating that "although the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so" and that on remand to resolve any Apprendi or Blakely problem, the trial court "may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence"); Smylie v. State, 823 N.E.2d 679, 684-85 (Ind.) (holding that to meet Blakely requirements, a jury may be convened to consider sentencing factors), cert. denied, ___ U.S. ___, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005); State v. Schofield, 895 A.2d 927, 937 (Me.2005) ("Although state law does not specifically provide for a jury trial on sentencing, our recognition of such a procedure is well within our inherent judicial power. . . ."); but see State v. Hughes, 154 Wash.2d 118, 110 P.3d 192, 209 (2005) ("This court will not create a procedure to empanel juries on remand . . . because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court. To create such a procedure out of whole cloth would be to usurp the power of the legislature."), abrogated on other grounds by Washington v. Recuenco, ___ U.S. ___, ___ n. 4, 126 S.Ct. 2546, 2553 n. 4, 165 L.Ed.2d 466 (2006).
Nor would the Double Jeopardy Clause bar the impaneling of juries upon resentencing. In the death-penalty context, when a case is remanded for a new penalty phase we regularly allow a new jury to be empanelled. See, e.g., Preston, 607 So.2d at 408; Robinson v. State, 574 So.2d 108, 112 (Fla.1991); Rose v. State, 461 So.2d 84, 87 (Fla.1984). Outside of the capital context, the Double Jeopardy Clause is even less demanding with respect to sentencing. As the United States Supreme Court explained in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), "double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence," id. at 136, 101 S.Ct. 426, because "a sentence does not have the qualities of constitutional finality that attend an acquittal." Id. at 134, 101 S.Ct. 426. We, too, have concluded that "double jeopardy is not implicated in the context of a resentencing following an appeal of a sentencing issue." Trotter v. State, 825 So.2d 362, 365 (Fla.2002) (citing Harris v. State, 645 So.2d 386, 388 (Fla.1994)). Of course, the facts found by a new jury at resentencing cannot conflict with any facts found by the original jury in connection with the defendant's conviction. But in cases like this one, where the jury did not issue any finding concerning a sentence-enhancing fact, no double jeopardy concerns arise.

II. The Principle of Finality
Whereas the principle of de novo resentencing permits the application of new sentencing laws to reopened cases, the principle of finality prohibits retroactive application in most other circumstances. As we have explained, applying every new *528 law to every old case would "destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state . . . beyond any tolerable limit." Witt v. State, 387 So.2d 922, 929-30 (Fla.1980). The principle of finality avoids those dire consequences by allowing retroactive application only when new rulings "so drastically alter the substantive or procedural underpinnings of a final conviction and sentence that the machinery of postconviction relief is necessary to avoid individual instances of obvious injustice." Id. at 925. We have already evaluated Apprendi under the Witt standard and held that it does not apply retroactively. See Hughes, 901 So.2d at 837. It is safe to assume that Blakely, which "appl[ied] the rule . . . in Apprendi," 542 U.S. at 301, 124 S.Ct. 2531, will not apply retroactively, either. Thus, the defendant clearly has no right to retroactive relief under Apprendi or Blakely.
The question here is whether applying those cases to a resentencing amounts to the same thing. The answer depends largely on when the principle of finality attaches. We have stated on several occasions that finality attaches when the defendant's conviction (not the sentence) becomes final. See Johnson v. State, 904 So.2d 400, 407 (Fla.2005) (stating "that once a conviction has been upheld on appeal, the State acquires a strong interest in finality"); Goodwin v. State, 751 So.2d 537, 546 (Fla.1999) ("[O]nce a conviction has been affirmed on direct appeal `a presumption of finality and legality attaches to the conviction and sentence.'" (quoting Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993))). In fact, throughout our opinion in Hughes, we emphasized the affirmance of the conviction as the critical moment for retroactivity purposes. See 901 So.2d at 838 ("In this case, we consider whether a decision of the United States Supreme Court applies to defendants whose convictions already were final when that case was decided."); id. at 839 ("Once a conviction is final, . . . the State acquires an interest in the finality of the convictions."); id. at 840 ("[T]he issue is whether such cases [as Apprendi] can be applied to defendants whose convictions already were final when the decision was rendered.").[3]
The district court took seriously this language from Hughes. See Galindez, 910 So.2d at 285 ("Hughes'[s] focus on the finality of the conviction is very important" (quoting Isaac v. State, 911 So.2d 813, 816 (Fla. 1st DCA 2005) (Kahn, J., dissenting))). Because the defendant's conviction became final before Apprendi and Blakely, and because he offered no legitimate basis for reopening it, the district court concluded that any application of those two decisions on resentencing would be impermissibly retroactive under the express language of Hughes. See id. at 285. The district court relied heavily on an earlier dissent by Judge Kahn, who observed that under our existing rules of criminal procedure "the factual matters underlying the guidelines departure sentences may not be submitted to a jury." Isaac, 911 So.2d at 815 (Kahn, J., dissenting). Without a new jury, the district *529 court reasoned, "applying [Apprendi and Blakely] to this case would amount simply to a pardon of the defendant for an act he confessed to committing because the rules of the game were deemed to have changed after it was over." Galindez, 910 So.2d at 285.
Certainly, if a sentencing jury can now be empaneled to decide the "sentencing facts," then applying Apprendi and Blakely here would not implicate Galindez's conviction and would therefore not constitute a retroactive application of those cases. On the other hand, if a new jury cannot be empanelled at resentencing, then applying Apprendi or Blakely to defendants whose convictions already were final is retroactive and therefore violates Hughes. In fact, applying Apprendi and Blakely without a new jury is even more disruptive than most retroactive applications. It creates a bizarre paradox: the State is faulted for failing to prove sentence-enhancing facts to the jury at a time when it was not required to do so, yet is barred from proving those facts to a jury once such a requirement has been created. The result is that defendants will obtain relief (i.e., lighter sentences than their behavior warrants) because of defects in the process leading to their convictions, despite the continued finality of those convictions. That is the very essence of retroactive application. It violates the principle of finality that we so adamantly defended in Hughes and contradicts its express language. See 901 So.2d at 838 (describing the issue as whether Apprendi "applies to defendants whose convictions already were final when that case was decided," and then answering no).

III. Conclusion
I agree with the majority that any violation of Apprendi or Blakely would be harmless error in this case, and thus I join in affirming the denial of relief to the defendant. Eventually, however, we will have to decide whether Apprendi and Blakely apply to resentencing proceedings. Already other cases raising the same issue are pending in this Court. I believe the answer to the question is tightly bound with the procedures that would apply at resentencing. If a jury cannot be empaneled to decide the new sentencing facts, then applying Apprendi and Blakely to resentencings undermines the de novo nature of the proceedings and implicates the process leading up to a defendant's still final conviction. It therefore affects more than just the sentencing; it affects the conviction itself, and applying Apprendi and Blakely amounts to a retroactive application, which we expressly prohibited in Hughes.
WELLS and BELL, JJ., concur.
NOTES
[1] Although in his rule 3.800(b) motion Galindez disputed the trial court's assessing any victim injury points, he does not repeat that claim here.
[2] Galindez's confession, which was admitted at trial, would not be an "admission" as contemplated in Blakely. The admissions to which the Court alluded were facts the defendant admits in a guilty plea. Blakely, 542 U.S. at 304, 124 S.Ct. 2531; cf. Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (noting that in determining the nature of the defendant's prior conviction for sentence-enhancing purposes, the sentencer is "generally limited to examining the statutory definition [of the crime], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented") (emphasis added). Courts have included a defendant's testimony at sentencing and stipulations at trial in this category. See, e.g., United States v. Collier, 413 F.3d 858, 860-61 (8th Cir.2005) (holding "no Sixth Amendment violation" occurred because the defendant "chose to testify [at sentencing] and admitted the facts upon which the court imposed sentence"); United States v. Champion, 234 F.3d 106, 110 (2d Cir.2000) (finding that at trial the defendant stipulated to the quantity of drugs involved in the crime and "he would have been subject to a mandatory minimum sentence of 10 years, in any event"). Galindez's confession at arrest does not constitute an express agreement to a jury or judicial finding.
[3] Lest these statements be dismissed as accidental, I note that the United States Supreme Court, which applies a different retroactivity standard, has also placed emphasis on the conviction. See Teague v. Lane, 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality) ("Application of constitutional rules not in existence at the time a conviction becomes final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.") (emphasis added); see also id. at 301, 109 S.Ct. 1060 (defining a "new rule" as one "not dictated by precedent existing at the time the defendant's conviction became final") (emphasis omitted).