DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KERN R. DAVIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1370

[September 6, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jack S. Cox, Judge; L.T. Case No. 501994CF004965AXXXMB.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

For a second time, this case is before us on a claim that the sentence imposed is illegal. We reverse a second time because we agree with the appellant, Kern R. Davis, that the trial court, on remand, did not resentence him with the full panoply of due process.

*Factual Background and Trial Court Proceedings*

In 1994, Davis was convicted after trial of robbery with a deadly weapon and armed carjacking. At the initial sentencing, he was sentenced as a habitual violent felony offender to life in prison with a minimum mandatory of fifteen years on each count. In 2013, Davis filed a motion to correct illegal sentences, contending his prior robbery conviction in Dade County, which was the sole qualifying offense for his habitual violent felony offender status, was reversed on appeal. The trial court denied the motion. We reversed the trial court and remanded the case for resentencing with the following direction: "Although [Davis] does not qualify as an [habitual violent felony offender], he may qualify as a habitual

felony offender and those sanctions may be sought on remand." *Davis v. State*, 164 So. 3d 96 (Fla. 4th DCA 2015).

On remand, the State filed its notice of intent to seek an enhanced penalty for Davis as a habitual felony offender. Davis filed a sentencing memorandum, listing as mitigating factors his strong family support, the fact that his previous robbery conviction in Dade County was vacated based on false testimony, the classes that he has taken while incarcerated, the fact that he was physically and sexually abused by family members, his advanced age with a decreased chance of recidivism, and evidence of rehabilitation through programs while incarcerated.

A resentencing hearing was held by a successor judge because the judge who tried the case and imposed the sentence twenty-two years earlier was no longer on the bench. At the beginning of the hearing, the trial court stated that it read everything that was submitted to it, including Davis's sentencing memorandum and the attached letters from family and friends and certificates of completion from the programs Davis had completed while incarcerated. The trial court also reviewed a reconstructed scoresheet the parties agreed was accurate. Eventually, the parties stipulated that Davis qualified for sentencing as a habitual felony offender. The trial court permitted both parties to present whatever evidence and arguments either desired. However, as discussed more fully below, the statements of the trial court in pronouncing sentence indicated it was not inclined to "revisit" the sentence imposed by the judge who tried the case or consider the new evidence regarding Davis's behavior while in prison. The trial court determined Davis to be a habitual felony offender and sentenced him again to life in prison with the mandatory minimums. Davis gave notice of appeal.

*Appellate Analysis*

Because Davis claims a denial of due process, the standard of review for a constitutional claim is *de novo*. *See A.B. v. Fla. Dep't of Children & Family Servs.*, 901 So. 2d 324, 326 (Fla. 3d DCA 2005) (citing *G.C. v. Dep't of Children & Families*, 791 So. 2d 17, 19 (Fla. 5th DCA 2001)) ("The standard of review for the mother's constitutional claim is de novo as this issue involves a question of law.").

Both parties agree that when a sentence has been reversed as illegal and the case is remanded for resentencing, a defendant is entitled to the full panoply of due process considerations on resentencing. *State v. Fleming*, 61 So. 3d 399, 406 (Fla. 2011) (quoting *State v. Scott*, 439 So. 2d 219, 220 (Fla. 1983)). What the parties disagree about is whether Davis

received the full panoply of due process considerations when resentenced upon remand. Davis contends the trial court interpreted our remand instructions to simply direct the trial court to determine whether Davis was eligible for sentencing as a habitual offender, in which case, the previously imposed sentence would stand. The State contends the trial court fully understood it was to conduct a *de novo* sentencing, and did so, but exercised its discretion to impose the same sentence imposed by the judge who tried the case. The State further argues that on resentencing after an erroneous habitualization, the trial court may impose a sentence to achieve the original sentencing intent, but not exceed it, citing to *Dixon v. State*, 41 So. 3d 990, 991 (Fla. 4th DCA 2010), and *Suarez v. State*, 974 So. 2d 451, 453 (Fla. 3d DCA 2008).

In *Galindez v. State*, 955 So. 2d 517 (Fla. 2007), in a specially concurring opinion, Justice Cantero explained the principles of a *de novo* resentencing:

> We have consistently held that resentencing proceedings must be a "clean slate," *Preston v. State*, 607 So. 2d 404, 408 (Fla. 1992), meaning that the defendant's vacated sentence becomes a "nullity" and his "resentencing should proceed de novo on all issues bearing on the proper sentence." *Morton* [*v. State*], 789 So. 2d [324, 334 (Fla. 2001)] (quoting *Teffeteller*[ *v. State*], 495 So. 2d [744, 745 (Fla. 1986)]). This means that the trial court must extend to the defendant the "full panoply" of existing procedural protections, *State v. Scott*, 439 So. 2d 219, 220 (Fla.1983), including any new constitutional protections that have been recognized since the defendant's original sentencing. In fact, because resentencing is de novo, the State was *required* to produce evidence on sentencing issues even if the State established the fact at the original sentencing. This was required whether or not the defendant disputed the issues in the prior sentencing proceeding. In addition to the parties' rights to present additional evidence and the State's burden to produce evidence, we also have held that the trial court is not limited to its findings from the prior proceeding, but may make new findings and may even increase the sentence.

*Id.* at 525-26 (Cantero, J., specially concurring) (emphasis in original).

From our review of the record, we are satisfied that the trial court, upon resentencing, afforded Davis due process by reviewing in advance all materials submitted by the defense for the resentencing hearing and

allowing him to present any evidence and arguments he wanted.  We note that Davis makes no issue on appeal regarding whether the successor judge was sufficiently familiar with the facts of the case, the trial, or the prior sentencing proceeding.

However, the statements by the successor judge during the hearing lead us to conclude that the trial court did not proceed on a "clean slate" on resentencing and intentionally decided it was not going to evaluate the same evidence submitted at trial and the initial sentencing hearing, together with the new evidence, which included information about Davis's performance in prison.  The trial court acknowledged it was "permitted," by our remand instructions, to go through an evaluation process and change the length of the initial sentence, but announced "I am not going to revisit that," referring to the prior sentence, and "I am not prepared to do that," referring to consideration of Davis's performance while in prison.  Thus, although the trial court afforded substantial due process to Davis on resentencing, it failed to afford the full panoply of due process, to which he was entitled.

We are mindful of our decision in *Peters v. State*, 128 So. 3d 832 (Fla. 4th DCA 2013), where the defendant claimed that on resentencing, a successor judge merely "rubber stamped" the sentence imposed by the initial sentencing judge many years before.  *Id.* at 841.  We affirmed the trial court in that case, but we said:

> In other words, "[w]hat is essential is for the successor judge to be sufficiently familiar with the case so that the imposition of a sentence is *his or her act of independent judgment*, not mere reliance on the decision of the original judge."

*Id.* at 840 (alteration in original and emphasis added) (quoting *Ross v. State*, 958 So. 2d 442, 443 (Fla. 4th DCA 2007)).  We also noted in *Peters* that at resentencing, the successor judge emphasized that "his sentence was constructed 'regardless of what [the prior judge] would have done.'" *Id.* at 841.  Unfortunately, on the record in this case, we cannot conclude the successor judge engaged in the same type of independent assessment.

We reverse and remand, directing the trial court to vacate the sentence imposed, and conduct a new sentencing proceeding with the full panoply of due process.  Because the trial judge who imposed the last sentence has retired from the bench, there is no issue regarding whether a successor judge should conduct the proceedings.

*Reversed and remanded.*

4

CIKLIN, J., concurs specially with opinion.
GROSS, J., dissents with opinion.

CIKLIN, J., concurring specially.

Because I believe this is somewhat of a "sleeper issue," I write a cautionary concurrence about what may admittedly be an obscure yet potential pitfall for an unwary judge or practitioner.

I agree with the dissent's suggestion that the defendant's original sentence may very well have been "entirely appropriate for the crime appellant committed, given his criminal history." But, respectfully, that notion misses the point of the majority opinion: A unanimous three-judge panel of this court ordered that the original sentence be vacated and that Davis be resentenced with the commensurate panoply of due process rights.

By ordering that the original life sentence be vacated because it was based on a conviction that had been set aside, that life sentence—by operation of law—became an immediate nullity, entitling this criminal defendant to a de novo resentencing proceeding. That meant, as Justice Cantero forcefully characterized it, a "clean slate" including the "full panoply" of due process rights as to "all issues bearing on the proper sentence."[1] *Galindez,* 955 So. 2d at 525 (citations omitted).

Yet, here, the lower court expressed its mistaken view that it was not appropriate to consider Davis' substantial evidence of his rehabilitation or the over two dozen certificates of achievement that he had earned in prison or any of his accomplishments or personal history since the now vacated original sentence was imposed. The trial court's decision in this regard was black letter judicial error because Davis was denied his clean slate.

With due respect to the dissent, there is no need for the majority to "pour over" the trial judge's resentencing determination or his analysis as

---

[1] Davis's offenses occurred in 1994, and thus Florida's sentencing guidelines applied at the time. Davis's guideline prison sentencing range was 7 years to 11.5 years. If Davis qualified as a habitual violent felony offender (HVFO) or habitual felony offender, then he could be sentenced up to life imprisonment regardless of the guideline recommendation. Davis was, in fact, sentenced to life imprisonment as an HVFO. As it turned out, however, that designation became an erroneous designation because, as we explained in *Davis I,* the threshold conviction needed to brand Davis as an HVFO (and as the trial court expressly used as its basis to impose a life sentence), was declared a legal nullity.

to why he would not start with a clean slate at a resentencing. We need not search for any nuanced wording or phrases uttered by the lower court. Even a cursory review of the record reveals it to be immediately apparent that a legally cognizable criminal resentencing proceeding did not take place below, as ordered by this appellate court and in the manner that the law required.

To his credit, the trial judge admitted that he was not prepared "to come in at the end here and to say let's take a [another] look at the crime that was committed and [at Davis's updated personal history since the original sentence] . . . to resentence him."

While the trial court was not prepared to conduct this review, that is precisely what solid constitutional precepts required. The failure to do so sends it back to the trial court—almost automatically.

Thus, the majority need not rely on "flimsy notion[s]" or negotiate "the drawing of lines" to decide that the trial court either did not understand the legal significance of the court's unanimous remand in *Davis I* or did not understand the due process requirements attendant to resentencing a criminal defendant, or both.

Again, an obscure potential pitfall for an unwary judge or practitioner.

As the majority opinion indicates in providing direct quotes from the trial judge, this is not a matter of "scouring" the words of the trial judge to find a reason to once again reverse and remand for resentencing. The trial court's decision to decline to clean the slate and thereafter conduct a de novo sentencing hearing was plain record error that denied Davis due process under the Fourteenth Amendment to the United States Constitution and article 1, section 9 of the Florida Constitution.

We can only hope that a third trial judge will take the necessary steps to obviate the need for a *Davis III*.

GROSS, J., dissenting.

The majority has scoured the trial judge's words, like a medieval monk pouring over sacred text, looking for nuances that would support reversal.

Here, the legal basis for reversal is that the judge violated the constitution by failing to exercise "independent judgment." A failure to exercise independent judgment is a flimsy notion upon which to erect a

6

reversal. If law involves the drawing of lines, who can say when independent judgment begins and ends?

The majority is reversing a sentence that is entirely appropriate for the crime appellant committed, given his criminal history. I agree with the state that the trial judge here conducted a *de novo* sentencing hearing, for which he was clearly prepared. The judge exercised his discretion to impose the same sentence as the judge who presided over the 1994 trial.

The sad irony of the law is that a judge can shred the Constitution in sentencing so long as he does not utter words that give him away. Those are cases that courts typically affirm. *See, e.g.*, *Charles v. State*, 204 So. 3d 63, 71-74 (Fla. 4th DCA 2016) (Gross, J., dissenting).

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***