DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KENNY FABRA AYOS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D17-3840 and 4D17-3857

[June 19, 2019]

Consolidated appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Thomas M. Lynch V, Judge; L.T. Case Nos. 16-3306CF10A and 16-5007CF10A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

***ON APPELLANT'S MOTION FOR REHEARING,***
***REHEARING EN BANC, AND/OR CLARIFICATION***

GERBER, C.J.

We grant appellant's motion for rehearing and clarification, and deny appellant's motion for rehearing en banc. We substitute the following opinion for the opinion which we issued on March 20, 2019.

The defendant appeals from his conviction and sentence following his no contest plea to crimes of a sexual and non-sexual nature committed against a former romantic partner. The defendant raises three properly preserved arguments: (1) his scoresheet should not have included 160 sexual penetration points, because he pled to an information which charged "union or penetration" in the alternative, and at no time during the plea did he admit that penetration occurred; (2) if defense counsel, by stipulating to a factual basis at the time of the plea, implicitly stipulated to a penetration finding, then such stipulation was insufficient to waive the defendant's right to a jury determination of penetration; and (3) the

trial court erred in denying the defendant's Florida Rule of Criminal Procedure 3.800(b)(2) motion, which challenged the legality of various costs. On the first two arguments, we affirm. On the third argument, we agree that all but one of the challenged costs require reversal and correction of the judgment.

We will begin by addressing the first two arguments on the penetration issue, before addressing the third argument on the costs issue.

## *The Penetration Issue*

As stated above, defense counsel stipulated to a factual basis at the time of the plea, thereby implicitly stipulating to a penetration finding, which was reflected in the scoresheet's inclusion of 160 sexual penetration points. At no point during the plea colloquy, or the sentencing hearing which immediately followed, did the defendant object to his scoresheet's inclusion of 160 sexual penetration points, in contrast to the information which charged "union or penetration" in the alternative. Further, during the sentencing hearing, the victim testified on direct examination, without objection, that the defendant put his penis in her vagina, and that the defendant put his tongue in her vagina, without her consent in either instance. Defense counsel's cross-examination of the victim also acknowledged that one count was for "the penis and vagina penetration" and the other count was for "[the defendant's] mouth to [the victim's] vagina." At no point did defense counsel challenge the victim on any alleged lack of penetration in either instance. Instead, defense counsel's main argument sought a downward departure or other mitigation because the defendant thought the sexual encounter was consensual.

*Dames v. State*, 186 So. 3d 593 (Fla. 4th DCA 2016), although factually distinguishable, is illustrative here. In *Dames*, the state charged the defendant with lewd or lascivious battery and child abuse. *Id.* at 594. Pursuant to a plea bargain, which greatly benefitted the defendant, the state dropped the lewd and lascivious battery charge. *Id.* In exchange, the defendant pled guilty to child abuse. *Id.* The defendant also acknowledged that he was originally charged with lewd or lascivious battery and that he scored beyond the statutory maximum for child abuse. *Id.*

During the plea colloquy, the trial court explained that a child abuse charge, involving a sexual penetration allegation, carried a sixty-six month prison sentence. *Id.* at 594-95. Although the defendant never expressly admitted any facts, he never contradicted the trial court's references to

2

sexual penetration.  *Id.*  Moreover, the defendant did not object to his scoresheet, which included victim injury points for penetration.  *Id.*

Later, the defendant violated probation and was sentenced based upon the original scoresheet, which included the penetration points.  *Id.* at 595. On appeal, the defendant argued that the trial court erred in assessing penetration points because he never admitted penetration during his guilty plea and penetration was not an element of child abuse, the charge to which he pled.  *Id.*

We concluded the defendant's argument lacked merit, reasoning:

> [A]t the initial sentencing hearing, [the defendant], through counsel, stated he had no objection or correction to the criminal punishment code scoresheet that scored eighty points for penetration and reflected a minimum sentence of 66.9 months.
>
> The trial court referred to [the defendant's] crime as "the charge of child abuse when there's sexual penetration."  At the plea colloquy that followed, [the defendant] acknowledged that he understood that the bottom of the sentencing guidelines called for him to go to prison for *over* five years.  At the time of accepting the State's generous plea bargain, [the defendant] was not left with the false impression that the maximum sentence he could receive was five years' imprisonment.  In fact, the record demonstrates that [the defendant] affirmatively agreed to the inclusion of penetration points on the scoresheet and that this enhancement was part of the bargain that allowed him to plea down to the child abuse charge, albeit with sex offender probation conditions which [the defendant] proceeded to violate.

*Id.*

*Dames* differs from the instant case insofar as *Dames* involved a beneficial plea bargain, whereas the instant case involved an open plea seeking a downward departure.  Nevertheless, the plea colloquy and sentencing hearing in both cases were markedly similar.  Here, both parties stipulated to a factual basis for the crimes, and neither party objected when the circuit court found a factual basis based upon its independent review of the probable cause affidavits and arrest reports. The defendant also did not object to the scoresheet's penetration points assessment.  Further, the record reflected repeated, and undisputed,

3

references to penetration. The victim testified at the sentencing hearing that the defendant penetrated her with his penis and tongue. Defense counsel's cross-examination of the victim did not dispute the penetration allegation. On the contrary, defense counsel's questions presupposed that penetration occurred. Finally, the defendant did not dispute any aspect of the victim's testimony. Rather, the defendant's primary argument was that the sexual contact was consensual.

At worst, if any error occurred, the error was harmless. To support the harmless error argument, the state relies on *Galindez v. State*, 955 So. 2d 517 (Fla. 2007). Although *Galindez* is not on point procedurally, its reasoning to support a harmless error conclusion is persuasive. To explain *Galindez*'s persuasiveness, we will examine the case in greater detail.

In *Galindez*, the defendant was convicted of two counts of lewd and lascivious assault on a minor and one count of child abuse by impregnating the victim. *Id.* at 519-20. The trial court ultimately sentenced the defendant using a scoresheet reflecting the trial court's determination that eighty victim injury points should be assessed for penetration. *Id.* at 520. After the defendant was sentenced, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Galindez*, 955 So. 2d at 519. Relying on *Apprendi*, the defendant filed a Florida Rule of Criminal Procedure 3.800(b) motion, arguing that the trial court's assessment of eighty victim injury points was improper on a count alleging that the defendant "plac[ed] his penis in union with . . . *and/or* penetrat[ed] the vagina of [the victim] with his penis." *Id.* at 523 (emphasis added). According to the defendant, because the count was pled in the alternative, and because the jury did not specifically find that penetration occurred, the trial court could assess only forty victim injury points. *Id.*

The Florida Supreme Court upheld the defendant's sentence, reasoning:

> [A]ssuming *Apprendi* applies to [the defendant's] []sentencing, for purposes of our harmless error analysis the issue is whether the failure to have the jury make the victim injury finding . . . contributed to the conviction or sentence – in other words, whether the record demonstrates beyond a reasonable doubt that a rational jury would have found penetration.

At trial the young victim, then pregnant by [the defendant], testified that she and [the defendant] engaged in sexual intercourse on multiple occasions over a period of several months. [The defendant's] confession confirming these facts, including his admission that they repeatedly had sexual intercourse, was admitted at trial. Finally, [the defendant's] defense at trial was that the twelve-year-old victim consented. Thus, [the defendant] did not dispute the facts of the sexual relationship at trial, and he did not contest them at resentencing, either.

In light of the clear and uncontested record evidence of penetration . . . we hold that no reasonable jury would have returned a verdict finding there was no penetration. Accordingly, we find the error in this case harmless beyond a reasonable doubt.

*Id.* at 523-24 (internal citations omitted).

As mentioned above, *Galindez* is not on point procedurally with this case because the defendant in *Galindez* had a jury trial, whereas here no jury trial occurred because the defendant pled no contest. Thus, the harmless error test applied in *Galindez* – whether a reasonable jury would have returned a verdict finding no penetration in light of the clear and uncontested record evidence of penetration – is inapplicable to this case.

Instead, the harmless error test we would apply here is whether the record demonstrates beyond a reasonable doubt that penetration occurred. We conclude the record can support such a finding because, as stated above, during the sentencing hearing, the victim testified on direct examination, without objection, that the defendant put his penis in her vagina and his tongue in her vagina without her consent. Defense counsel's cross-examination of the victim also acknowledged that one count was for "the penis and vagina penetration" and the other count was for "[the defendant's] mouth to [the victim's] vagina." At no point did defense counsel challenge the victim on any alleged lack of penetration in either instance. Instead, similar to *Galindez*, the defense's main argument was the defendant thought the sexual encounter was consensual.

Based on the foregoing, we affirm the defendant's convictions and sentences which were based on the scoresheet's inclusion of 160 sexual penetration points.

### *The Costs Issue*

5

As stated above, the defendant argues that the trial court erred in denying his Florida Rule of Criminal Procedure 3.800(b) motion, which challenged the legality of various costs. We agree that all but one of the challenged costs require reversal and correction of the judgment.

In both Case No. 16-3306CF10A and Case No. 16-5007CF10A, the $60 charges for the misdemeanor counts under section 938.05, Florida Statutes (2016), must be stricken because section 938.05 allows imposition of court costs per case, not per count. *Cf. McNeil v. State*, 215 So. 3d 55, 58 (Fla. 2017) ("If the Legislature intended to impose costs per case [under sections 938.08, 938.085, and 938.10(1), Florida Statutes (2006)], it could have expressly done so as it has in other cost statutes. *See, e.g.,* . . . § 938.05(1), Fla. Stat. (2016) ('shall pay as a cost in the case') . . .").

In both Case No. 16-3306CF10A and Case No. 16-5007CF10A, the $10 charges under section 318.18(19), Florida Statutes (2016), the $30 charges under section 318.18(13)(a), Florida Statutes (2016), and the $65 charges under section 318.18(20), Florida Statutes (2016), must be stricken because chapter 318 concerns traffic offenses, and the defendant was not charged with traffic offenses. *See Anguille v. State*, 238 So. 3d 856, 856 (Fla. 4th DCA 2018) (court erred by imposing costs under section 318.18, Florida Statutes (2017), when no traffic offense was charged).

In both Case No. 16-3306CF10A and Case No. 16-5007CF10A, the $26 charges under Seventeenth Judicial Circuit Administrative Order VI-02-D-3 must be stricken because that order applies to only county court cases for hearings held on criminal traffic and misdemeanor violations, none of which applies here.

In Case No. 16-3306CF10A, the $151 charge for the Rape Crisis Trust Fund under section 938.085, Florida Statutes (2016), must be stricken because none of the convictions in that case are offenses enumerated under section 938.085 as subjecting a defendant to discretionary costs.

We reverse the imposition of the foregoing charges, and remand for the ministerial actions of striking those charges from the judgment. The defendant need not be present for such ministerial actions.

We affirm the imposition of the $201 domestic violence surcharge under section 938.08, Florida Statutes (2016), in Case No. 16-3306CF10A. *See West v. State*, 244 So. 3d 1208, 1208 (Fla. 1st DCA 2018) ("[The defendant] was convicted of breaking into the home of the mother of his child and

committing battery.  With convictions of this type, § 938.08, Florida Statutes, requires the imposition of a $201 domestic violence-related surcharge.").

*Affirmed in part, reversed in part, and remanded as directed.*

TAYLOR and KUNTZ, JJ., concur.

\*          \*          \*

**No further motions for rehearing shall be permitted.**