ORFINGER, J.
Luis Ayala appeals his convictions of three counts of attempted first-degree murder with a firearm,[1] two counts of aggravated battery with great bodily harm with a firearm,[2] and shooting from a vehicle [3] following an incident that occurred in July 1995. Because he fled to Mexico, Mr. Ayala was not arrested until April 2004 and not tried until November 2004. On appeal, he contends that the trial court erred by permitting the State to introduce testimony from his wife in violation of the marital privilege and by imposing an upward departure sentence without proper findings of fact by the jury. We affirm the evidentiary ruling without comment. We also affirm Mr. Ayala’s sentences, but write to explain why his sentences are constitutionally permissible.
In the early morning hours of July 2, 1995, several people were drinking at the Blue Jeans bar in Apopka. One person testified that while he was sitting at the bar, Mr. Ayala came up and spoke to him. When he asked Mr. Ayala to leave him alone, Mr. Ayala poked him in the chest and yelled at him. As a result, Mr. Ayala and his friends were escorted from the bar. Later in the evening, the man who had the confrontation with Mr. Ayala, walked out to the parking lot with some friends. While they stood outside talking, a small blue car drove through the parking lot several times. Suddenly, gunfire erupted from the car’s open passenger *45 window. Mr. Ayala was identified by witnesses as the driver and only person in the car. Three people were hit by the shots, two of whom were seriously injured.
Vickie Salazar, who was married to Mr. Ayala at the time of the shootings, testified that at that time, Mr. Ayala drove a blue two-door car. Ms. Salazar testified that Mr. Ayala was not in Mexico in June 1995 for his nephew’s first communion as he claimed, but was in Apopka on July 1 and 2, 1995. On the morning of July 2, 1995, Ms. Salazar noticed that there was a hole in the passenger door of Mr. Ayala’s car and that the passenger window was broken. After making these observations, Ms. Salazar spoke with Mr. Ayala. Following their conversation, Ms. Salazar and Mr. Ayala took the car to a friend’s house and covered it with a tarp. Ms. Salazar then retrieved a gun from Mr. Ayala and turned it over to the Orange County Sheriffs Department. An FDLE lab analyst testified that several bullet casings found in Mr. Ayala’s car, a bullet found at the scene, and a bullet extracted from one of the victims were fired from the gun that Ms. Salazar turned over to the sheriffs department.
In contrast, Mr. Ayala, a native of Mexico and an illegal immigrant, testified that he was in Mexico in June 1995 to attend his nephew’s first communion. Mr. Ayala said that he did not return to the United States until June 1997, and was not at Blue Jeans on the night of the shooting. He also testified that the gun was not his.
The jury found Mr. Ayala guilty on all counts. The jury also found that Mr. Ayala possessed and used a firearm during the commission of the crimes. A sentencing hearing was held before the Honorable Richard Conrad in December 2004. Judge Conrad found four reasons for an upward sentence departure: (1) the offenses were violent and committed in an especially cruel manner, (2) the offenses created a substantial risk of death or great bodily harm to many people, (3) the victims sustained extraordinary physical and mental injury, and (4) there were multiple victims. Judge Conrad departed from the 1994 sentencing guidelines and imposed departure sentences of concurrent terms of life in prison on counts one, two, and three; thirty years in prison on counts four and five; and fifteen years, in prison on count six. Three-year minimum mandatory sentences for counts one through five were also imposed for the use of a firearm.
Mr. Ayala filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(b), arguing that one of the trial court’s reasons for an upward departure, that there were multiple victims, was not a valid basis to depart under section 921.0016, Florida Statutes (1994). Mr. Ayala also contended that the trial court’s findings regarding sentence aggravators violated his right to trial by jury as explained in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Judge Conrad granted Mr. Ayala’s motion, struck the “multiple victims” ag-gravator, and ordered a new sentencing hearing.
When Judge Conrad became unavailable to conduct the resentencing, the case was transferred to the Honorable C. Alan Lawson. Over the objection of defense counsel, a new sentencing hearing was held before a newly impaneled jury that heard both arguments from counsel and witnesses’ testimony. The jury found evidence beyond a reasonable doubt to support two aggravating factors: (1) that Mr. Ayala created a substantial risk of death or great bodily harm to many persons, and (2) that his acts caused extraordinary physical or emotional trauma or perma *46 nent physical injury. Based on these findings, Judge Lawson resentenced Mr. Ayala to the same upward departure sentences as had originally been imposed.
Following resentencing, Mr. Ayala filed a second rule 3.800(b) motion to correct sentence. Mr. Ayala argued that under Shull v. Dugger, 515 So.2d 748 (Fla.1987), the trial court was required to resentence him to a guidelines sentence and was not authorized to impanel a new jury and conduct a new sentencing hearing. The trial court denied Mr. Ayala’s motion, concluding:
In Shull, the court held that when all of the reasons stated by the trial court in support of a departure sentence are reversed by an appellate court, resen-tencing following remand must be within the presumptive guidelines sentence and the trial court may not enunciate new reasons for a departure sentence. Shull, 515 So.2d 748. The purpose of the holding in Shull is to prevent an after-the-fact justification for a previously imposed departure sentence. Jones v. State, 559 So.2d 204, 206 (Fla.1990). However, the holding in Shull is not applicable in the instant ease for several reasons. First, this Court did not impose the new departure sentences based on new reasons. The reasons for the new departure sentences were the same as two of the aggravating circumstances used as grounds for the initial departure sentence. Second, this Court did not find all the reasons for the initial depar-tice sentences invalid. See Bell v. State, 522 So.2d 989, 991 (Fla. 1st DCA 1988). Only one reason (multiple victims) was determined to be invalid as a justification for a departure sentence and was stricken. Third, this Court did not rule on the merits of the remaining reasons for the initial departure sentences. See Viera v. State, 532 So.2d 743, 744 (Fla. 3d DCA 1988). It merely found that the method of imposing the departure sentences without a jury verdict was improper. Finally, Shull is not controlling because the trial court, not the appellate court, reviewed the grounds for the initial departure sentences in a Rule 3.800(b) motion. For the reasons stated, the Court correctly imposed upward departure sentences based on the findings of a jury.
This appeal followed.
Mr. Ayala’s appeal is premised on the holdings of Apprendi and Blakely.[4] In Apprendi, the Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. 2348. In Blakely, the Supreme Court clarified Apprendi by holding that “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” 542 U.S. at 303,124 S.Ct. 2531.[5]
*47 In the instant case, the trial court, recognizing the Apprendi/Blakely problem, attempted to remedy it by impaneling a new jury to consider the aggravating sentencing factors urged by the State. Whether an Apprendi/Blakely error can be remedied by impaneling a new jury for sentencing, as was done here, has not yet been decided in Florida, though some argue in support of such a procedure. See generally Galindez v. State, 955 So.2d 517, 527 (Fla.2007) (Cantero, J., concurring) (“To remedy violations of Apprendi and Blakely, we would be entirely justified in adopting a procedure for the [impaneling] of new juries on resentencing.”).
Courts in some states have rejected attempts to respond to Apprendi/Blakely errors by impaneling sentencing juries in the absence of rules or statutes authorizing that procedure. See, e.g., State v. Shattuck, 704 N.W.2d 131 (Minn.2005); State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005); State ex rel. Mason v. Griffin, 104 Ohio St.3d 279, 819 N.E.2d 644 (2004); State v. Kessler, 276 Kan. 202, 73 P.3d 761 (2003) (holding that court could not improvise sentencing jury proceeding to respond to Apprendi). Courts in other jurisdictions have held that impaneling a new jury to remedy an Apprendi/Blakely error is permissible. See, e.g., U.S. v. Henry, 282 F.3d 242 (3d Cir.2002) (holding that jury can be convened for sole purpose of deciding facts that will determine sentence following Apprendi error at trial); State v. Schofield, 895 A.2d 927 (Me.2005) (holding that court had “inherent judicial power” to impanel sentencing jury in response to Blakely); Smylie v. State, 823 N.E.2d 679, 684-85 (Ind.2005) (holding that to meet Blakely requirements, jury may be convened to consider sentencing factors), cert. denied, 546 U.S. 976, 126 S.Ct. 545 (2005); Aragon v. Wilkinson, 209 Ariz. 61, 97 P.3d 886, 891 (2004) (stating that “although the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so” and that on remand to resolve any Apprendi or Blakely problem, the trial court “may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence”).
Because we conclude the error here is harmless, we need not decide if the remedy utilized was authorized. As the Supreme Court has recognized, while an Apprendi/Blakely error is one of constitutional significance, the commission of a constitutional error at trial alone does not entitle a defendant to an automatic reversal. Indeed, “most constitutional errors can be harmless.” Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). “ ‘[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.’ ” Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). The Supreme Court has concluded that the “[fjailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error” and is therefore subject to harmless error analysis. Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006). Under a harmless error analysis, we must determine if the record “demonstrates beyond a reasonable doubt that a rational jury” would have found *48 the existence of the sentencing enhancement factor(s). Galindez, 955 So.2d at 523.
On the record before us, we conclude that any error in not having the original jury make the findings needed to determine the sentence enhancements was harmless. The undisputed evidence at trial conclusively demonstrated that “[t]he offense created a substantial risk of death or great bodily harm to many persons” and one or more of the victims “suffered extraordinary physical or emotional trauma or permanent physical injury” as a result of the crime. See § 921.0016(3)® & (l), Fla. Stat. (1995).[6] In fact, in his opening statement, Mr. Ayala’s counsel conceded that the victims were gravely injured and that shots were fired into a crowd of people. Mr. Ayala’s defense was based solely on identity and alibi. He claimed that he was in Mexico at the time of the crime and that he was misidentified as the shooter.
Because we conclude that the Appren-di/Blakely error was harmless, we need not consider whether the remedy utilized, the impaneling of a new sentencing jury, is authorized under Florida law or not. For these reasons, we affirm Mr. Ayala’s convictions and sentences.
AFFIRMED.
GRIFFIN and EVANDER, JJ., concur.

. §§ 782.04(l)(a)2„ 777.04, 775.087, Fla. Stat. (1995).

. §§ 784.045(l)(a)l., 775.087, Fla. Stat. (1995).

.§ 790.15(2), Fla. Stat. (1995).

. At least two Florida appellate courts have concluded that Apprendi/Blakely claims can be presented for the first time in a timely motion pursuant to Florida Rule of Criminal Procedure 3.800(b). See Mack v. State, 955 So.2d 51 (Fla. 1st DCA 2007); Gisi v. State, 848 So.2d 1278, 1282 (Fla. 2d DCA 2003). At least implicitly, the Florida Supreme Court has done so as well. See Galindez v. State, 955 So.2d 517 (Fla.2007). If an Apprendi/Blakely error is a true sentencing error, allowing a defendant to assert such an error in a rule 3.800(b) motion is appropriate. If, however, it is considered an instructional or verdict form error, or a failure of proof, presumably it would be waived unless preserved by a contemporaneous objection. See Whyte v. State, 881 So.2d 1183 (Fla. 5th DCA 2004).

. Because Mr. Ayala’s trial occurred after both Apprendi and Blakely had been issued, *47 we need not concern ourselves with any question of retroactivity.

. When multiple reasons exist to support a departure from a guideline sentence, the departure shall be upheld when at least one circumstance or factor justifies the departure regardless of the presence of other circumstances or factors found not to justify a departure. § 921.001(6), Fla. Stat. (1995).