204 So.2d 224 (1967)
John Wayne KOONTZ, Appellant,
v.
STATE of Florida, Appellee.
No. 67-225.
District Court of Appeal of Florida. Second District.
November 15, 1967.
*225 Charles L. Cetti, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This case is an appeal by John Wayne Koontz, defendant below, from a judgment and sentence pronounced against him by the Criminal Court of Record for Hillsborough County, pursuant to a jury verdict finding him guilty upon an information charging him with the offense of attempted robbery.
Koontz freely admitted committing the offense alleged, which was the attempt to rob, at the point of a shotgun, a Kayo Service Station at about 1:25 A.M. in the nighttime. When the station attendant, one Whelden, made a lunge at Koontz's unloaded gun, Koontz turned and ran from the station.
The defense at the trial was coercion, based upon Koontz's claim that he was terrorized by members of a so-called "Spider Gang" and by the leader of the gang, one Lee Arnold Shinleaver, into attempting the robbery. It was contended that repeated physical abuses and dire threats made by the gang members against Koontz and certain members of his family caused him to join in their criminal depredations.
At the conclusion of all the testimony Koontz requested in writing the following instruction to the jury:
"I charge you that a person attempting to rob another under compulsion and coercion is not guilty of attempted robbery or any crime whatsoever if such person was subjected to real, eminent, and impending danger, or if he had reasonable grounds to believe that such danger was real, eminent, and impending and attempted such robbery because of such belief."
The trial Court refused such instruction because it was "not applicable". Upon appeal from the ensuing conviction, the refusal to give the foregoing quoted instruction is the sole point urged here for reversal.
There was no denial that defendant committed the offense charged. He even took *226 the witness stand voluntarily and told all about it. He testified, supported by his married sister, that the principal gang members, of whom there were some seven or eight, first began forcibly taking his pay checks from the State Road Department for about two and a half months until their harassment made him quit; that they beat him unmercifully on several occasions to make him join their gang; that they threatened several times to kill him if he did not join and follow their orders to rob and steal; that they threatened bodily harm to his sister, and also to his mother with whom he lived; that right after the attempted robbery for which he was tried they beat him up for having "botched" the job by fleeing from the Service Station without going through with the robbery; and that even after he was arrested and in jail there were reports relayed to him by deputy sheriffs at the jail, and confirmed by them, that the gang was going to bomb his mother's home.
Koontz identified them as Shinleaver, James Harold Cambron, Harry Winters, David Jinks, Pat Jinks, and Doug McGinnis. They were all apparently well known to the officers but none of them testified except Cambron, and so far as the record shows were not even subpoenaed. And, strangely enough, Cambron testified under protection of immunity, but even he did not deny that Koontz was coerced or intimidated by the gang, nor was he asked about it. So that, actually there was no direct testimony contradicting the evidence of coercion or intimidation.
The foregoing are just some of the highlights of the unusual, and perhaps fantastic, defense of coercion in this case. If the jurors believed it, or if it even raised a reasonable doubt in their minds as to his criminal intent to commit the offense charged, it would be a legal defense. In any event, he would be entitled to have the jury properly instructed on this, as well as any other, legitimate defense.
22 C.J.S. Criminal Law § 44, p. 135, states the rule thusly:
"* * * in general an act which would otherwise constitute a crime may be excused on the ground that it was done under compulsion or duress, since the necessary ingredient of intention, as discussed supra §§ 29-36, is then lacking.
"The compulsion or coercion which will excuse the commission of a criminal act must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done; it must be continuous, and there must be no reasonable opportunity to escape the compulsion without committing the crime. A threat of future injury is not enough, particularly after danger from the threat has passed. However it is not necessary that accused show that he was absolutely driven and made to commit the act charged as a crime."
Our Supreme Court has recognized and approved the foregoing rule in the only Florida case where the defense was asserted, that of Hall v. State, 1939, 136 Fla. 644, 187 So. 392. In Hall the defendant had been tried and convicted of prejury and coercion had been one of the defenses. The trial Judge had given inter alia the following charge to the jury:
"* * * I charge you that a person may be excused from perjury * * * where she had given false testimony * * * under compulsion and coercion, but to constitute coercion or compulsion it must be more than fear apparent  a mere fear alone needlessly or credulously entertained can never excuse or justify perjury, but to constitute coercion or compulsion to an extent which may be an excuse it must be shown * * * that testimony was given under force or circumstances which impelled her against her will and that she was then subjected to danger, that is real danger, that the *227 danger was present, that it was existent at the time, that it was imminent and that it was impending and not to be avoided."
The Supreme Court held that the foregoing instruction placed too great a burden on the defendant where coercion was a defense, and reversed the conviction solely upon that point, holding as follows:
"Our conclusion is that in charging the jury in this connection that the jury must believe from the evidence that at the time the testimony was given the defendant was then subjected to real, present danger, existent at the time, imminent and not to be avoided, the trial court committed reversible error, for this charge dealt with a matter of vital import to the defendant in the light of the evidence. It was only necessary that the danger referred to was a real, imminent and impending danger; or that under all the circumstances shown in evidence the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time she was testifying, and gave such false testimony because of such belief."
In the case sub judice we are constrained to hold the trial Court in error in refusing to give to the jury the requested instruction hereinbefore quoted. As previously stated, the only defense made at the trial was the alleged coercion or compulsion. However disdainfully the trial Judge may have felt about the merits of such defense from a factual standpoint, however even we may feel about it, is beside the point. It was for the jury and the jury alone to pass upon it as a recognized defense to a criminal charge. And if there was "evidence introduced in support thereof", to quote the language of Bagley v. State, Fla.App. 1960, 119 So.2d 400; Canada v. State, Fla.App. 1962, 139 So.2d 753; Younghans v. State, Fla.App. 1957, 97 So.2d 31 and Motley v. State, 1945, 155 Fla. 545, 20 So.2d 798, the defendant was "entitled to have the jury instructed on the law applicable to his theory of defense".
For failure to give the instruction requested, the judgment appealed is 
Reversed.
LILES, C.J., and ALLEN, J., concur.