53 So.3d 1003 (2010)
Aundra JOHNSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC09-966.
Supreme Court of Florida.
October 7, 2010.
As Revised on Denial of Rehearing January 27, 2011.
*1004 Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, Richard L. Polin, Bureau Chief, and Nicholas Merlin, Assistant Attorneys General, Miami, FL, for Respondent.
PER CURIAM.
Aundra Johnson seeks review of the decision of the Third District Court of Appeal in Johnson v. State, 10 So.3d 680 (Fla. 3d DCA 2009), on the basis that it expressly and directly conflicts with decisions of the Fourth District Court of Appeal in Biscardi v. State, 511 So.2d 575 (Fla. 4th DCA 1987); Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987); and Rigdon v. State, *1005 621 So.2d 475 (Fla. 4th DCA 1993).[1] The issue before this Court is whether it is per se reversible error when a judge erroneously instructs a jury prior to deliberations that it cannot have any testimony read back. We hold that the error, if preserved, is per se reversible because it is impossible to determine the effect of the erroneous instruction on the jury without engaging in speculation, and thus a reviewing court is unable to conduct a harmless error analysis. Accordingly, we quash the Third District's decision in Johnson and approve of the Fourth District's decisions in Biscardi, Huhn, and Rigdon.

FACTS
Aundra Johnson was tried on charges of burglary and fleeing a police officer. At trial, prior to jury deliberation, the judge read a set of standard jury instructions that were compiled with the approval of the State and the defense. The judge then added the following instruction not previously mentioned at the charge conference:
Now let me caution you regarding the communication, if you want to ask a question regarding the facts, let me caution you that we don't have I [sic] simultaneous transcript of these proceedings so we don't have a transcript and any questions regarding the facts, I will tell you that you must rely upon your own recollection of the evidence.
The judge went on to instruct the jury: "If you have a question regarding the law, I will tell you that you have all the laws that pertains to this case in those instructions, there are no other laws."[2]
Johnson specifically objected to the judge's instruction that the jury could not have testimony read back, stating that the jury has a right to have testimony read back. The judge overruled the objection, and prior to the jury retiring to deliberate, the judge once again instructed the jury:
Ladies and gentlemen and, again, if you have a question regarding the facts, I cannot reopen the facts. I cannot explain the evidence to you. The normal answer that I give you is that you must rely upon your own recollection of the evidence. If you have differences of opinion you must hash them out amongst yourselves.
After deliberations without any questions being asked by the jury or any requests for the read-back of testimony, the jury convicted Johnson of the crime of fleeing a police officer, but acquitted him of the burglary charge.
On appeal to the Third District, Johnson claimed that the trial judge erred in instructing the jury that the law did not permit him to read back testimony. The Third District agreed and concluded that the trial court erred by discouraging the jury from requesting any read-back of testimony, which the State conceded. In particular, the Third District stated: "[W]hile the trial court has the discretion to deny a jury's request to read back testimony, it may not mislead the jury into thinking that a read-back is prohibited." Johnson, 10 So.3d at 681 (quoting Avila v. State, 781 So.2d 413, 415 (Fla. 4th DCA 2001)). However, the Third District held that the error was harmless based upon its conclusion that the evidence against Johnson was "overwhelming." Id.[3] Consequently, the *1006 Third District affirmed Johnson's conviction and sentence. Id. at 682. Judge Cope dissented to the use of a harmless error test and alternatively disagreed that the error could be deemed harmless in this case:
We should order a new trial. Defense counsel timely and correctly objected to the trial court's instruction. Neither the State nor the majority opinion has cited any authority for the proposition that this type of error is subject to harmless error analysis. Assuming arguendo that such an analysis could be applied, it is inappropriate here, where the jury had enough reasonable doubt about the State's case to acquit the defendant on a number of charges.
Id.
The Third District's holding that the error was harmless conflicts with the Fourth District's decisions in Biscardi, Huhn, and Rigdon, all cases in which the Fourth District applied the per se reversible error rule to similar misleading jury instructions.

ANALYSIS
The issue before this Court is whether a trial court's erroneous instruction that the jury is not permitted to request read-backs of testimony is per se reversible or whether a reviewing court can determine that the error was harmless. To resolve the issue, we first explain why the trial court's instruction was erroneous. Next, we discuss the harmless error test and per se reversible error. We then discuss the situations in which Florida courts apply the per se reversible error rule and review the reasoning of the Fourth District cases that are in conflict with the decision on review in this case. We conclude that when a judge erroneously instructs a jury that it may not request to have testimony read back, a reviewing court is unable to conduct a harmless error analysis because it is impossible to determine the effect of the erroneous instruction on the jury. The reviewing court cannot determine what testimony the jurors might have requested to have read back, and thus it is impossible to determine the effect of the error on the jury without engaging in speculation. Accordingly, we must hold that such error is per se reversible.
It is undisputed that it is error for a judge to instruct a jury, prior to deliberations, that it cannot have any testimony or instruction read back.[4] Florida Rule of Criminal Procedure 3.410 states:
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them.
*1007 Because the rule provides that juries may have testimony read back, it is clearly error for a trial judge to advise a jury otherwise. Johnson objected to the erroneous instruction, thereby preserving the error for review.
When an error is preserved for appellate review by a proper objection, an appellate court applies either a harmless error test or a per se reversible error rule.[5] Although a defendant is not entitled to a completely error-free trial, he or she has a constitutional right to a fair trial free of harmful error. See Goodwin v. State, 751 So.2d 537, 538-39, 541 (Fla.1999). Thus, the role of the appellate courts is to ensure that criminal trials are free of harmful error, the presence of which would require reversal. The harmless error rule is "concerned with the due process right to a fair trial" and "preserves the accused's constitutional right to a fair trial by requiring the state to show beyond a reasonable doubt that the specific [errors] did not contribute to the verdict." State v. DiGuilio, 491 So.2d 1129, 1135-36 (Fla.1986).
The test for harmless error focuses on the effect of the error on the trier of fact. Id. at 1139. "The question is whether there is a reasonable possibility that the error affected the verdict." Id. The burden is on the State to prove beyond a reasonable doubt that the error did not contribute to the outcome. Id. The harmless error test is not
a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.
Id.; see also Ventura, 29 So.3d at 1089-90; Cuervo v. State, 967 So.2d 155, 167 (Fla. 2007); Cardenas v. State, 867 So.2d 384, 395 (Fla.2004); Williams, 863 So.2d at 1189-90. Thus, to apply the harmless error test, the reviewing court must be able to determine the effect of the error on the trier of fact.
Like the harmless error test, the per se reversible error rule is concerned with the right to a fair trial. DiGuilio, 491 So.2d at 1135. "The test of whether a given type of error can be properly categorized as per se reversible is the harmless error test itself." Id. "If application of the test to the type of error involved will always result in a finding that the error is harmful, then it is proper to categorize the error as per se reversible." Id.
This Court has also applied the per se reversible error rule to those cases where the appellate court is unable to conduct a harmless error analysis because it would have to engage in pure speculation in order to attempt to determine the potential effect of the error on the jury. These circumstances include when a trial *1008 judge "respond[s] to a request from the jury without the prosecuting attorney, the defendant, and defendant's counsel being present and having the opportunity to participate in the discussion of the action to be taken on the jury's request." Ivory v. State, 351 So.2d 26, 28 (Fla.1977); see also Bradley v. State, 513 So.2d 112, 113-14 (Fla.1987) ("[B]oth the state and the defendant must have the opportunity to participate, regardless of the subject matter of the jury's inquiry. Without this process, preserved in the record, it is impossible to determine whether prejudice has occurred during one of the most sensitive stages of the trial." (emphasis omitted) (quoting Curtis v. State, 480 So.2d 1277, 1279 (Fla. 1985))). This Court has more recently applied the per se reversible error rule when a bailiff has unsupervised communications with a jury. See State v. Merricks, 831 So.2d 156, 161 (Fla.2002) ("To apply a harmless error analysis to such improper communications as the State proposes would `unnecessarily embroil trial counsel, trial judges and appellate courts in a search for evanescent harm, real or fancied.'") (quoting Ivory, 351 So.2d at 28 (England, J., concurring)). Per se reversible error also occurs when a sitting juror is substituted after deliberations begin because it is "nearly impossible to perform a harmless error analysis" since "any well-intentioned questioning of the jurors, original or alternate, in a good-faith attempt to provide those safeguards recognized under such an analysis is itself fraught with potential to contaminate the jury process." Williams v. State, 792 So.2d 1207, 1210 (Fla.2001).
Another circumstance in which this Court has held that an error is per se reversible because the reviewing court cannot conduct a harmless error analysis is when a jury is not instructed on a lesser-included offense one step removed from the charged offense. In such a situation, the reviewing court cannot determine the effect of the error on the jury because the court cannot know whether the jury would have convicted the defendant of the next lesser included offense if the jury had been given the option. As explained by this Court: "If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense." Pena v. State, 901 So.2d 781, 787 (Fla.2005) (citing State v. Abreau, 363 So.2d 1063 (Fla. 1978)). To conduct a harmless error analysis in that situation would be to engage in pure speculation.
Similar to the reasoning in these cases, the Fourth District concluded in Biscardi, Huhn, and Rigdon that when a trial judge indicates in his or her instruction to the jury that it will not be allowed to have testimony read back, reversible error occurs because it conveys to the jury that asking for rereading of testimony is prohibited. Thus, it is impossible to determine what testimony the jurors might have requested to have read back.
In Biscardi, the Fourth District held that a trial judge committed reversible error by telling the jury in the course of providing instructions that "`there is really no provision' for reinstruction or to have testimony read back." 511 So.2d at 580. The Fourth District reasoned:
[T]he judge's words may reasonably have conveyed to jurors that to ask for clarification of instructions or rereading of testimony would be futile. As a result they may have reacted as they did because they misapprehended the law or had a distorted recollection of some of the testimony.
Id. at 581. In response to the State's argument that prejudice must be shown, the Fourth District disagreed, stating, *1009 "Obviously, without going into the jurors' heads or their communication with each other appellant cannot demonstrate prejudice." Id.
In Huhn, which was issued on the same day as Biscardi, the Fourth District held that the trial judge committed harmful error by indicating to the jury during instruction that it could not have instructions repeated or testimony reread. Huhn, 511 So.2d at 591. Specifically, the trial judge stated:
Also, there is really no provision for me to either reinstruct you after I instruct you or certainly to have any testimony read back or certainly to call any witnesses back. You are going to have to remember the testimony and the instructions on the law as best you can and probably the next time we hear from you will be when that buzzer in there rings and we all jump about a foot up in the air and then, you have a verdict.
Id. The Fourth District reasoned that these remarks led at least some of the jurors to understand that they were prohibited from asking for further instruction or for a read-back. Id. It concluded: "[P]erhaps jurors would have . . . sought to have certain testimony read to them if they had thought it possible. In our view, the error was harmful." Id.
In Rigdon, the Fourth District again stated that it was reversible error "for the trial court to instruct the jury that any request to have testimony read back would be refused." 621 So.2d at 479. It reasoned:
[W]hile the instruction given contains indications that there remained a possibility of having testimony read back, it nevertheless resembles the instruction condemned in [Biscardi and Huhn] because the trial judge's comments may reasonably have conveyed to the jurors that to ask for rereading of testimony would be futile or was prohibited. This was reversible error.
Id. at 480.
We agree with the Fourth District's approach. We conclude that when a judge preemptively and erroneously instructs a jury that it cannot have any testimony read back, a reviewing court cannot properly conduct a harmless error analysis because it is impossible to determine what effect the erroneous instruction had on the jury.
A court attempting to conduct a harmless error analysis cannot know what testimony a jury would have requested to have read back or even whether a jury would have asked for a read-back at all. Therefore, a reviewing court cannot determine whether a jury was confused or needed clarification about the facts of the case, and it is impossible to discern whether the defendant was prejudiced by the error. An appellate court would be required to engage in pure speculation because if the jury followed the erroneous instruction, the jury would be misled to believe that it was not permitted to request read-backs of testimony. Because a harmless error analysis cannot be conducted when a judge preemptively instructs a jury that it cannot have any testimony read back, we hold that such error is per se reversible error.
In this case, the trial court preemptively instructed the jury as follows:
[I]f you want to ask a question regarding the facts, let me caution you that we don't have I [sic] simultaneous transcript of these proceedings so we don't have a transcript and any questions regarding the facts, I will tell you that you must rely upon your own recollection of the evidence.
This may have misled the jury to erroneously believe that it could not request *1010 read-backs of testimony. During deliberations, the jury did not ask questions or request read-backs of testimony. Because of the trial court's erroneous instructions in this case, it is impossible to determine whether the jury would have requested a read-back of testimony and thus impossible to determine whether or how the defendant may have been prejudiced by the erroneous instruction.
The United States Circuit Court of Appeals for the Second Circuit has applied a per se rule for the same reasons we do here. In United States v. Criollo, 962 F.2d 241 (2d Cir.1992), the trial lasted only two days and involved few witnesses. Nevertheless, the Second Circuit reasoned:
We have no way of determining whether the jury wanted to request a read-back, but was chilled from doing so by the court's prohibition against read-backs stated in the midst of defense counsel's summation. Since this case was so short and involved only a few witnesses, we might well conjecture that any request for a read-back would not be the result of a confused jury attempting to sort through reams of evidence, but rather such a request could indicate that the jury had a genuine inability to resolve serious questions of fact.
Id. at 244; see also United States v. White, 23 F.3d 404, 1994 WL 177280, at *6 (4th Cir. May 11, 1994) (unpublished) (Phillips, J., specially concurring) ("[T]here's much to be said for . . . declaring [the error] not subject to harmless error excuseprejudicial per se error. The Second Circuit recently has done just that in United States v. Criollo, 962 F.2d 241, 244 (2d Cir.1992), for the very good reason that principled harmless error analysis is impossible, there being no way, given the prohibition, ever to know whether a jury may have felt the need for a clarification that could have avoided a prejudice now forever hidden.").
Justice Polston's dissent relies on State v. Schopp, 653 So.2d 1016 (Fla.1995), and Galindez v. State, 955 So.2d 517 (Fla.2007), cases in which this Court applied a harmless error analysis to situations where a trial court failed to hold a Richardson[6] hearing and where an Apprendi[7] error occurred, respectively. However, the rationales for applying a harmless error analysis to those errors are not applicable here.
In Schopp, we receded from the rule that a trial court's failure to hold a Richardson hearing concerning a discovery violation is per se reversible error because there we determined it was clear from the record that the violation did not "materially hinder[] the defendant's trial preparation or strategy" and thus was harmless. Schopp, 653 So.2d at 1020. However, here, unless the jurors request a read-back despite the preemptive ban, the reviewing court cannot determine from the record whether the jurors would have asked for a read-back had they been given the opportunity. Such a determination would be speculation, even if the trial was short or there were few witnesses who all gave consistent testimony. Indeed, in such a situation, a jury's request for a read-back may indicate that the jury was particularly confused and unable to resolve issues of fact. This is distinguishable from discovery violations, where the reviewing court will sometimes have enough information from the record, even absent an adequate Richardson inquiry, to make a harmless error determination.
The issue in this case is likewise distinguishable from Apprendi errors. As with discovery violations, Apprendi errors are *1011 evaluated for harmlessness based on information contained in the record. Galindez, 955 So.2d at 523 (evaluating whether Apprendi error was harmless based on "whether the record demonstrates beyond a reasonable doubt that a rational jury would have found" the fact). This is in contrast to the error at issue here, where any harmless error determination would be based on speculation.

CONCLUSION
For the reasons stated above, we hold that it is per se reversible error when a trial judge preemptively instructs a jury that it cannot have testimony read back and the erroneous instruction is properly preserved for appellate review. Accordingly, we quash the Third District's decision in Johnson and remand for proceedings consistent with this opinion. We also approve of the Fourth District's decisions in Biscardi, Huhn, and Rigdon.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, C.J., concurs in part and dissents in part with an opinion, in which POLSTON and LABARGA, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which LABARGA, J., concurs.
CANADY, C.J., concurring in part and dissenting in part.
I agree with Justice Polston that the error at issue here does not fall within the category of per se reversible error. I therefore disagree with the majority's decision that requires a new trial. Instead, I would reverse and remand to the district court for a determination of whether the error was harmful.
In State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986), we recognized that a rule of per se reversible error is a "draconian measure." Rejecting the view that the constitutional violation at issue in DiGuilio required such a rule of per se reversal, we unequivocally held that "[p]er se reversible errors are limited to those errors which are `so basic to a fair trial that their infraction can never be treated as harmless error.'" Id. at 1135 (emphasis added) (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). We further acknowledged the high cost of improperly categorizing a type of error as "per se reversible": "[I]f an error which is not always harmful is improperly categorized as per se reversible, the court will erroneously reverse an indeterminate number of convictions where the error was harmless." Id.
As indicated by our reliance on Chapman, our understanding of per se reversible error in DiGuilio was rooted in the federal law concerning constitutional error. The United States Supreme Court has repeatedly recognized that even constitutional errors are ordinarily subject to harmless-error analysis. Only constitutional errors that "necessarily render a trial fundamentally unfair" can be held to "require reversal without regard to the evidence in the particular case." Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
"Harmless-error analysis . . . presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." Id. at 578, 106 S.Ct. 3101. Accordingly, the denial of counsel, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), or the presence of a biased adjudicator, see Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), are "errors that could never be *1012 harmless." Rose, 478 U.S. at 578 n. 6, 106 S.Ct. 3101. Per se reversal is an appropriate response to the absence of the "basic protections" without which a "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Id. at 577-78, 106 S.Ct. 3101 (citation omitted).
But such errors that require reversal automatically "are the exception and not the rule." Id. at 578, 106 S.Ct. 3101. Indeed, the Supreme Court has articulated a presumption against per se reversal: "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Id. at 579, 106 S.Ct. 3101.
The Supreme Court has identified errors "which defy analysis by `harmless-error standards'" as errors which result in "structural defects in the constitution of the trial mechanism""structural defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process." Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (emphasis added). The unlawful exclusion of members of the defendant's race from a grand jury, see Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), the denial of the right to self-representation at trial, see McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), and the denial of the right to public trial, see Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), are examples of structural defects not subject to harmless-error analysis. Fulminante, 499 U.S. at 310, 111 S.Ct. 1246.
Given the nature of such structural error, it is not surprising that the Supreme Court has "found an error to be `structural,' and thus subject to automatic reversal, only in a `very limited class of cases.'" Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). The Supreme Court has repeatedly rejected claims that various errors were not subject to harmless-error analysis. See, e.g., Washington v. Recuenco, 548 U.S. 212, 221-22, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (holding that failure to submit a sentencing factor to the jury was not a structural error and thus was subject to harmless-error review); Neder, 527 U.S. at 10, 119 S.Ct. 1827 (holding that trial court's error in omitting an element of a crime from the jury instructions was subject to harmless-error analysis); Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that improper denial of a defendant's right to impeach a witness under the Confrontation Clause was subject to harmless-error analysis); United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (holding that prosecutor's improper comments about defense's failure to present evidence were subject to harmless-error analysis).
Here, the trial court's error did not create a "structural defect[] in the constitution of the trial mechanism." Fulminante, 499 U.S. at 309, 111 S.Ct. 1246. It is totally implausible to suggest that a defendant has a right to have testimony read back to the jury which is "basic to a fair trial," DiGuilio, 491 So.2d at 1135, or that the possible failure to read back testimony that may have arisen from the trial court's erroneous instruction "necessarily render[ed] [the] trial fundamentally unfair," Rose, 478 U.S. at 577, 106 S.Ct. 3101. As the majority acknowledges, a trial court may exercise its discretion to deny a request to have testimony read back to the *1013 jury. Majority op. at 1006 n. 4 (citing State v. Riechmann, 777 So.2d 342, 365 (Fla.2000)). Since whether to have testimony read back to the jury is a discretionary matter, it cannot be the case that the erroneous instruction resulted in the denial of a "basic protection[]" necessary for a criminal trial to "reliably serve its function as a vehicle for determination of guilt or innocence." Rose, 478 U.S. at 577-78, 106 S.Ct. 3101.
There is no principled basis for distinguishing the error here from other jury instruction errors which are subjected to harmless-error analysis. See, e.g., Hunter v. State, 8 So.3d 1052, 1071 (Fla.2008) (applying harmless-error analysis to trial court's use of the term "and/or" in jury instructions), cert. denied, ___ U.S. ___, 129 S.Ct. 2005, 173 L.Ed.2d 1101 (2009); Cardenas v. State, 867 So.2d 384, 393 (Fla. 2004) (applying harmless-error analysis to trial court's error in instructing the jury on the presumption of impairment in a driving with an unlawful bloodor breathalcohol level case); Lara v. State, 699 So.2d 616, 618 (Fla.1997) (applying harmless-error analysis where the trial court gave an unconstitutional jury instruction regarding an aggravating factor).
The trial court's error therefore should be evaluated in the full context of the trial to determine if it was harmless.
POLSTON and LABARGA, JJ., concur.
POLSTON, J., concurring in part and dissenting in part.
I disagree with the majority's conclusion that it is per se reversible error when a trial judge instructs a jury, prior to deliberations, that it cannot have testimony read back. Although I agree that the instruction is in error, I believe that in some cases the error can be harmless. Therefore, I would quash the Third District's decision and remand for a harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Accordingly, I respectfully concur in part and dissent in part.
The majority holds that the read-back error here is per se reversible "because it is impossible to determine the effect of the erroneous instruction on the jury without engaging in speculation." Majority op. at 1005. I disagree. In State v. Schopp, 653 So.2d 1016 (Fla.1995), this Court receded from a similar per se reversible error ruling based upon presumed harm from the possibility of uncertainty. Specifically, in Schopp, this Court receded from its holding in Smith v. State, 500 So.2d 125 (Fla. 1986), wherein this Court held that the failure to conduct a Richardson[8] hearing was per se reversible error, assuming that "a reviewing court is in no position to determine from a cold record whether a discovery violation is harmless." Schopp, 653 So.2d at 1019 (describing Smith, 500 So.2d 125). The Smith court had reasoned that "an appellate determination as to whether a Richardson violation is harmless is impossible in light of the fact that `[t]he purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice.'" Id. (quoting Smith, 500 So.2d at 126). But the Schopp Court determined that there are exceptions to that stringent rule.
In Schopp, the State sought to admit the testimony of a police officer who was not included on the State's original witness list but was added to an amended witness list shortly before trial. Id. The trial court overruled defense counsel's objection and concluded that a Richardson hearing was not required, in part because of Schopp's request for a speedy trial. Id. The Fourth District Court of Appeal reversed based on this Court's opinion in Smith, although it was "`absolutely convinced that the admission *1014 of the testimony of the undisclosed witness and the failure to conduct a Richardson inquiry were harmless,' under the harmless error analysis set out in [DiGuilio]." Id. (quoting Schopp v. State, 641 So.2d 141, 142 (Fla. 4th DCA 1994)). The Fourth District was convinced the error was harmless because "1) the undisclosed witness presented testimony that was known to the defendant, was cumulative to other testimony, and concerned facts openly admitted by the defendant; 2) defense counsel admitted during opening statement that Schopp committed the offenses of which he was ultimately convicted; and 3) Schopp was acquitted of the charged offenses and thus `won' his case." Id.
This Court concluded that the circumstances in Schopp "demonstrate[d] that there are cases in which a reviewing court can determine that a discovery violation is harmless beyond a reasonable doubt, absent an adequate Richardson inquiry" because in that case it was clear "beyond a reasonable doubt that neither the discovery violation nor the trial court's failure to inquire into whether corrective sanctions were warranted materially hindered the defendant's trial preparation or strategy." Id. at 1019-20.
This Court reiterated that "a per se rule is appropriate only for those errors that always vitiate the right to a fair trial and therefore are always harmful." Id. at 1020 (citing DiGuilio, 491 So.2d at 1134-35) (emphasis added). We then explained that "we have never held that the failure to conduct a Richardson hearing always results in an unfair trial. Rather, we established the per se reversal rule based on our assumption that `no appellate court can be certain that errors of this type are harmless.'" Id. (quoting Cumbie v. State, 345 So.2d 1061, 1062 (Fla.1977)). But Schopp presented a case where a review of the record revealed that this type of error could be found harmless.
As in Smith, the majority has held here that the trial court's erroneous instruction on read-backs constitutes per se reversible error based upon uncertainty in determining whether, in some cases, this procedural error could be harmfulthe same reasoning that was proved to be unworkable in Schopp. In Schopp, however, the district court performed a thorough review of the record and described the circumstances present in that case. Here, the Third District's opinion does not discuss its review of the record but simply states that the evidence against Johnson was "overwhelming." Johnson v. State, 10 So.3d 680, 681 (Fla. 3d DCA 2009). But finding that the evidence is overwhelming is not the test for harmless error in Florida.
In Florida, an error is harmless if there is no reasonable possibility that the error affected the verdict. DiGuilio, 491 So.2d at 1139. As this Court has explained,
[H]armless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence. . . .
. . . .
The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict. . . .

*1015 . . . .
. . . The test must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review. The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Ventura v. State, 29 So.3d 1086, 1089-90 (Fla.2010) (quoting DiGuilio, 491 So.2d at 1138-39). I believe this Court should refrain from rejecting a harmless error standard in favor of creating this per se reversible error rule when a harmless error analysis under DiGuilio was not performed or reviewed by this Court.
In Galindez v. State, 955 So.2d 517, 518 (Fla.2007), this Court held that violations of Apprendi and Blakely are subject to a harmless error analysis.[9] In Galindez, a jury found the defendant guilty of "two counts of lewd and lascivious assault on a minor and one count of child abuse by impregnating the victim." Galindez, 955 So.2d at 519-20. Yet Galindez's scoresheet assessed 240 points for penetration. Id. at 520. This Court concluded that any Apprendi error was harmless. Id. at 523. This Court stated that "[i]n light of the clear and uncontested record evidence of penetration . . . we hold that no reasonable jury would have returned a verdict finding there was no penetration." Id. at 524. In reaching its conclusion, this Court relied on the harmless error analysis applied by the United States Supreme Court in Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (reversing the Washington Supreme Court's holding that harmless error analysis does not apply to an Apprendi error). See 955 So.2d at 521-22. This Court noted that it had "long applied" the harmless error test announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and outlined in DiGuilio, which we described as questioning whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." 955 So.2d at 522 (quoting Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
In Galindez, this Court applied a harmless error analysis even though the fact that led to the enhanced sentence had never been submitted to the jury. Although we did not know what the jury would have actually determined or what questions the jury would have asked if the fact enhancing the sentence had been submitted to the jury, we held that a harmless error analysis was appropriate. Similarly, here we do not know what the jury would have done absent the erroneous read-back instruction. We do not know what, if any, questions the jury would have had regarding the facts submitted to it for its consideration. And just as we perform a harmless error analysis when faced with the uncertainty surrounding an Apprendi violation, we should perform a harmless error analysis when faced with an erroneous read-back instruction.
*1016 I believe that, just as with violations of Apprendi, there are circumstances under which an erroneous read-back instruction can be harmless. At least one federal court has concluded that the specific read-back error at issue here can be harmless. In United States v. White, 23 F.3d 404, 1994 WL 177280 (4th Cir.1994) (unpublished), the Fourth Circuit concluded that an erroneous read-back instruction was harmless based upon its observations that the appellant's trial lasted just one-and-one-half days, and he was the only defendant; the announcement prohibiting read-backs was made after all the evidence was presented; four incriminating witnesses told consistent stories; the defense was not based on fine distinctions; and the appellant "point[ed] to nothing, either in general or in particular, that might have generated confusion among the jurors." White, 1994 WL 177280 at *3. The Fourth Circuit explained:
Of course we have no way of knowing whether the jury in White's trial would have asked for a read-back of any testimony, just as a reviewing court can never know with absolute certainty what weight a jury put on an erroneously admitted piece of evidence. It is difficult, and no doubt sometimes nigh impossible, to gauge the effect on a jury's verdict of, say, a coerced confession, but we are bound to do so when presented with such a case. The difficulty of applying the harmless error test in some (or even most) cases, however, is an inadequate basis for declaring a per se rule for all cases.
Id.
As in White, a proper review of the record here may have revealed the error was harmless, that is, that there was no reasonable possibility that the error affected the verdict. For example, it is possible that several witnesses gave consistent testimony, or that Johnson or his counsel admitted that he fled from a police officer, or that all the facts in the case were undisputed, or any number of other possible scenarios which could have led the Third District to conclude beyond a reasonable doubt that the read-back error did not contribute to the verdict.
On the other hand, a proper analysis could have led to the conclusion that the error was harmful. Maybe a review would have revealed the presence of conflicting testimony, or an exceptionally lengthy jury deliberation, or some questionable admission of evidence, or any number of other circumstances which could have led the Third District to conclude that the error was harmful. But even finding the error harmful in this case does not mean that the error could not be found harmless in another case. As in Smith, the majority is assuming that "no appellate court can be certain that errors of this type are harmless." Schopp, 653 So.2d at 1020 (quoting Cumbie, 345 So.2d at 1062). But "a per se rule is appropriate only for those errors that always vitiate the right to a fair trial and therefore are always harmful." Id. (emphasis added) (citing DiGuilio, 491 So.2d at 1134-35). That this type of error is always harmful has not been proven here. Therefore, this case does not present a sufficient basis for creating a per se reversible rule, especially considering that this Court has not been apprised of all the facts. Instead, in my view, this case should be reversed and remanded so that the Third District can perform a harmless error analysis under the standards adopted by this Court in DiGuilio.
Accordingly, I respectfully concur in part and dissent in part.
LABARGA, J., concurs.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
[2] We recognize that this instruction was not objected to and thus any error is not preserved. Therefore, we do not discuss this instruction further.
[3] The Third District actually used an incorrect harmless error test by focusing only on the "overwhelming evidence." As recently emphasized by this Court in Ventura v. State, 29 So.3d 1086, 1089 (Fla.2010), an "overwhelming evidence" test is not the correct test for determining whether an error was harmless. See also Williams v. State, 863 So.2d 1189, 1189-90 (Fla.2003).
[4] We note, however, that if a jury requests a specific read-back, a trial judge has broad discretion in deciding whether to grant the jury's request. State v. Riechmann, 777 So.2d 342, 365 (Fla.2000). Refusing a jury's specific request for a read-back is distinguishable from the preemptive ban at issue here. When a specific request from the jury to read back testimony is at issue, a reviewing court is able to conduct a harmless error analysis. Thus, if a trial judge refuses a jury's request for a specific read-back of testimony, the refusal is reviewed for abuse of discretion and is subject to a harmless error analysis, provided the issue is preserved. See Coleman v. State, 610 So.2d 1283, 1286 (Fla.1992).
[5] Both per se reversible error and harmful error analysis apply only if the issue is properly preserved for appellate review. See Rodas v. State, 967 So.2d 444, 446-47 (Fla. 4th DCA 2007) ("There is a difference between `per se reversible error' and `fundamental error.' The general rule is that a reversal in a criminal case must be based on a prejudicial error that was preserved by a timely objection in the trial court. A fundamental error is an exception to the contemporaneous objection rule. . . . A per se reversible error means that a reviewing court does not undertake harmless error analysis. . . . A per se reversible error is not necessarily a fundamental one." (citations omitted)). This is in contrast to fundamental error, which applies when an issue is not preserved. Cox v. State, 966 So.2d 337, 347 (Fla.2007) ("[A] claim of error that is not preserved by an objection during trial is procedurally barred on appeal unless it constitutes fundamental error.").
[6] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[7] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[8] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[9] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).